Luis G. Rullán, su esposa Zoraida Buxó, por sí y en representación de la Sociedad Legal de Gananciales compuesta por ellos, demandantes y peticionarios, *v.* Hon. Antonio J. Fas Alzamora et als., demandados y recurridos.

*Número:* CC-2003-958 *Resuelto:* 13 de enero de 2006

744

*Carlos M. Vergne Vargas*, abogado de la parte peticionaria; *José A. Velázquez Grau* y *Homero González López*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR RIVERA PÉREZ emitió la opinión del Tribunal.

El presente recurso nos brinda la oportunidad de establecer los límites del poder investigativo de la Rama Legislativa de Puerto Rico. Se nos solicita la revocación de una resolución emitida por el Tribunal de Apelaciones. Mediante la resolución recurrida el foro intermedio apelativo denegó la expedición del recurso de *certiorari* presentado por los demandantes de autos. Estos últimos presentaron ante el Tribunal de Primera Instancia una demanda de sentencia declaratoria e interdicto. Solicitaron una orden de entredicho provisional y la expedición de un interdicto preliminar. La acción de autos pretendía impedir que el Secretario de Hacienda entregara copia de las planillas

contributivas de los demandantes, que habían sido requeridas por una Comisión Especial del Senado de Puerto Rico. Entre otras cosas, el foro intermedio apelativo entendió que, por disposición expresa del Código de Rentas Internas, las planillas contributivas son documentos públicos sujetos a ser entregados por el Secretario de Hacienda a una comisión legislativa autorizada para ello por el Senado o la Cámara de Representantes de Puerto Rico. Veamos los hechos que originan el presente recurso.

I

El 25 de noviembre de 2003 el Lic. Luis G. Rullán Marín, su esposa, la Lic. Zoraida Buxó Santiago, y la Sociedad Legal de Gananciales constituida por ambos, presentaron una demanda de sentencia declaratoria e interdicto (demanda de interdicto). Además, solicitaron la expedición de una orden de entredicho provisional y la expedición de un interdicto preliminar. La referida acción fue presentada contra el Presidente del Senado, la Comisión Especial para Investigar la Situación Existente en la Corporación de Puerto Rico para la Difusión Pública[1] (Comisión Especial), sus miembros y el entonces Secretario de Hacienda.[2] Con la demanda de autos, se presentó copia de un parte noticioso de prensa escrita, del que surgía que la Comisión Especial había citado al entonces Secretario de Hacienda, Hon. Juan A. Flores Galarza, para que les entregara cier-

---

[1] Dicha comisión fue creada en virtud de la R. del S. 82 de 7 de febrero de 2001, con el propósito de "investigar la situación existente en la Corporación de Puerto Rico para la Difusión Pública (W.I.P.R.), a fin de determinar su nivel de cumplimiento con la política pública que motivó su creación, el estado de sus finanzas, forma en que se han invertido los fondos gubernamentales que le han sido asignados, sus operaciones, personal, otorgamiento de contratos y programación". Véase Apéndice, págs. 73–76.

[2] Apéndice, págs. 21–65.

tas y determinadas copias de planillas contributivas de los demandantes de autos.(³)

El procedimiento de autos fue iniciado para evitar que se entregaran copias de las referidas planillas a la Comisión Especial hasta tanto un juez pasara juicio sobre la razonabilidad y pertinencia de dicho requerimiento a la luz de lo resuelto en *Rodríguez v. Scotiabank de P.R.*, 113 D.P.R. 210 (1982), y en los casos *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 D.P.R. 945 (1993); *R.D.T. Const. Corp. v. Contralor I*, 141 D.P.R. 424 (1996); *R.D.T. Const. Corp. v. Contralor II*, 141 D.P.R. 861 (1996), y *Pueblo v. Loubriel, Suazo*, 158 D.P.R. 371 (2003). Reclamaron la protección, reconocida en nuestro ordenamiento, a la privacidad de la información contributiva de personas naturales o jurídicas.

Así las cosas, el Tribunal de Primera Instancia procedió a citar una vista para el 26 de noviembre de 2003. En dicha vista, el codemandado y oficial investigador de la Comisión Especial, Lic. Moisés Abreu Cordero, informó al Tribunal de Primera Instancia que el Secretario de Hacienda no estaba citado a comparecer ante dicho órgano legislativo del 1 al 3 de diciembre de 2003. El foro primario ordenó al licenciado Abreu Cordero que, para el 2 de diciembre de 2003, le informara si el Secretario de Hacienda había sido citado para entregar la información contributiva de los demandantes de autos. En conformidad con la orden emitida por el foro primario, el 2 de diciembre de 2003 el licenciado Abreu Cordero presentó una Moción en Cumplimiento de Orden. Anejó a ésta copia de un requerimiento escrito de la presidenta de la Comisión Especial, Hon. Velda González de Modesti, senadora, dirigido al Secretario de Hacienda.(⁴)

---

(³) El 3 de diciembre de 2003, a petición de los demandados, la parte demandante, aquí peticionaria, presentó una enmienda a su demanda para incluir el nombre de su esposa, Lic. Zoraida Buxó. Véase Solicitud Enmendada Urgente de Entredicho Provisional, e Interdicto Preliminar y Permanente y/o de Sentencia Declaratoria, Remedios Provisionales, Apéndice, págs. 85–108.

(⁴) Apéndice, págs. 68–82.

Mediante dicho escrito, le requería al Secretario la entrega, el 10 de diciembre de 2003 a las 10:00 A.M., de la información contributiva de los demandantes.[5] Entre otras cosas, le requirió lo siguiente:

- Planilla de Contribución Sobre Ingresos del *Lcdo. Luis G. Rullán Marín* y su esposa, *Lcda. Zoraida Buxó Santiago* para los años 1998 al 2002;
- Planilla de Contribución Sobre Ingresos del *BUFETE RULLAN & BUXO* para los años 1998 al 2002 .... (Énfasis en el original.)[6]

El 3 de diciembre de 2003 los demandantes solicitaron al Tribunal de Primera Instancia la celebración de una vista de remedios provisionales. La vista fue señalada por el foro primario para el 8 de diciembre de 2005 con el propósito de considerar la demanda de interdicto presentada por los demandantes de autos.[7]

En apoyo a su demanda de interdicto, los demandantes alegaron que los documentos solicitados constituyen información confidencial. Arguyeron que, conforme a lo resuelto en *Rodríguez v. Scotiabank de P.R.*, supra, los individuos tienen una expectativa de intimidad constitucionalmente protegida sobre su información contributiva. Alegaron que, según lo resuelto en *R.D.T. Const. Corp. v. Contralor I*, supra, *R.D.T. Const. Corp. v. Contralor II*, supra, *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, y *Pueblo v. Loubriel, Suazo*, supra, cualquier intervención del Estado con los derechos de intimidad de un individuo viola la cláusula contra registros y allanamientos irrazonables. Por ello, previo

---

[5] Dicha solicitud no fue notificada a los demandantes, aunque sí lo fue al abogado de éstos. Además, la referida solicitud no indicaba la razón por la que se requería la información contributiva de los demandantes ni la relevancia o pertinencia de ésta con la investigación que llevaba a cabo la Comisión Especial para Investigar la Situación Existente en la Corporación de Puerto Rico para la Difusión Pública (Comisión Especial).

[6] Carta al Hon. Juan A. Flores Galarza de 1 de diciembre de 2003, Apéndice, págs. 81–82.

[7] Orden emitida por el Tribunal de Primera Instancia de 5 de diciembre de 2003, Apéndice, pág. 132.

a su intervención, debía mediar una orden expedida por un juez. En la alternativa, procedía notificar sobre dicho requerimiento a las partes afectadas de manera que, si lo objetaban, pudieran obtener la intervención de un juez que determinara su razonabilidad y pertinencia.

Celebrada la vista, y en corte abierta, el foro primario denegó la demanda de interdicto. Concluyó el Tribunal de Primera Instancia que asumiendo, sin resolverlo, que lo establecido en *R.D.T. Const. Corp. v. Contralor II*, supra, y en *R.D.T. Const. Corp. v. Contralor I*, supra, aplicara al requerimiento de los demandantes, la Comisión Especial cumplió con el requisito de notificación al adelantar vía facsímil copia de la Moción en Cumplimiento de Orden al representante legal de la parte demandante. Entendió que dicho requerimiento fue notificado a los demandantes antes de la entrega, ya que la referida moción incluía copia de la solicitud hecha por la Comisión Especial, en la que requería al Secretario de Hacienda copia de ciertas y determinadas planillas de los demandantes. Añadió que la Comisión Especial cumplió con lo dispuesto en la Sec. 1055(c) del Código de Rentas Internas de Puerto Rico de 1994[8] (Código de Rentas Internas), al requerir al Secretario de Hacienda copia de las planillas de contribución sobre ingresos de los codemandantes. Concluyó que, conforme a la Resolución del Senado Núm. 3559,[9] la Comisión Especial contaba con la facultad para investigar y examinar copia de las referidas planillas de contribución sobre ingresos.

Inconforme, los demandantes presentaron un escrito de Apelación y/o Petición de Certiorari, ante el Tribunal de

---

[8] Sec. 1055(c) de la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, 13 L.P.R.A. sec. 8455(c).

[9] R. del S. Núm. 3559 de 22 de octubre de 2003. La referida resolución enmendó el inciso (p) de la Sec. 1 y la Sec. 3 de la R. del S. Núm. 82 de 7 de febrero de 2001, según enmendada, para disponer que la Comisión Especial estaba autorizada para solicitar información sobre arbitrios, contribuciones, patentes, licencias, derechos y otros impuestos que considere necesaria para la investigación.

Apelaciones.([10]) Acompañaron al referido escrito una Moción Urgente en Auxilio de Jurisdicción.([11])

Mediante Resolución de 10 de diciembre de 2003, el foro intermedio apelativo ordenó al Secretario de Hacienda que se abstuviera de entregar copias de las planillas de los apelantes hasta tanto dispusiera lo contrario.([12]) Ordenó al Secretario de Hacienda a exponer su posición respecto al recurso en cuestión.([13]) Del mismo modo, ordenó al foro primario emitir un dictamen fundamentado y por escrito, copia del cual debía ser notificado al foro intermedio apelativo y a las partes.([14])

El 10 de diciembre de 2003 la corporación Rullán & Buxó, P.S.C. presentó ante el Tribunal de Apelaciones una moción de intervención en el pleito.([15]) Requirió que dicho foro aclarara que la resolución emitida, que paralizó la entrega de copias de las planillas, le era extensiva al ente corporativo en cuestión. Alegó que aunque la demanda de interdicto no había sido enmendada formalmente, el foro primario autorizó la enmienda solicitada para incluir a la corporación como codemandante, sin que mediara una oposición de los demandados. En la alternativa, solicitó que se le permitiera su intervención en el recurso de *certiorari* presentado ante dicho foro. El foro intermedio apelativo denegó tal intervención porque no había evidencia de que la referida persona jurídica hubiera sido incluida propiamente como codemandante ante el tribunal recurrido.([16])

---

([10]) Éste fue acogido como un recurso de *certiorari* por el Tribunal de Apelaciones por tratarse de una resolución interlocutoria. Apéndice, págs. 1–132.

([11]) Apéndice, págs. 133–138.

([12]) Apéndice, págs. 139–140.

([13]) Íd.

([14]) Íd. El dictamen fue emitido por el Tribunal de Primera Instancia el 10 de diciembre de 2003. Véase Apéndice, págs. 184–185.

([15]) Véase Moción Urgente Informativa en Solicitud de Intervención y en Solicitud de Orden, Apéndice, págs. 175–177.

([16]) Resolución emitida por el Tribunal de Apelaciones de 10 de diciembre de 2003, Apéndice, págs. 178–179. La corporación presentó una solicitud de reconsideración de la referida determinación el 15 de diciembre de 2003. Véase Moción Urgente en Reconsideración y en Solicitud de Orden, Apéndice, págs. 180–183.

Por su parte, el Secretario de Hacienda arguyó, entre otras cosas, que por disposición expresa de la ley, las planillas e información de índole contributiva son documentos públicos y se permite su inspección por parte de una comisión autorizada para ello por el Senado o por la Cámara de Representantes de Puerto Rico. Añadió que la R. del S. Núm. 3559 facultó expresamente a la referida Comisión Especial a requerir tales documentos. Señaló que, conforme a la Sec. 1055(c) del Código de Rentas Internas, 13 L.P.R.A. sec. 8455(c), en aquellas situaciones en las que una Comisión del Senado solicita la divulgación de las planillas, ello tiene que ocurrir en una sesión ejecutiva, lo que garantiza y salvaguarda la divulgación de la información en ellos contenida.

El 17 de diciembre de 2003 el Tribunal de Apelaciones emitió una resolución en la que denegó el auto solicitado y se archivó en autos copia de su notificación a las partes el mismo día.[17] Concluyó el referido foro lo siguiente: (1) que las planillas contributivas son documentos públicos por disposición expresa del Código de Rentas Internas, sujetas a ser entregadas por el Secretario de Hacienda a una comisión legislativa autorizada a requerirlas; (2) que la referida disposición del Código de Rentas Internas provee que copia de las planillas se suministren en sesión ejecutiva de la comisión legislativa, lo que garantiza y salvaguarda una divulgación restringida o limitada de la información contenida en ellas; (3) que, contrario a lo resuelto en *R.D.T. Const. Corp. v. Contralor II*, supra, y en *R.D.T. Const. Corp. v. Contralor I*, supra, las planillas son documentos públicos, por lo que los contribuyentes no tienen una expectativa legal razonable de confidencialidad sobre dichos documentos frente a un requerimiento de una Comisión legislativa expresamente facultada para requerir su entrega; (4) que por tratarse de documentos entregados al

---

[17] Resolución emitida por el Tribunal de Apelaciones de 17 de diciembre de 2003, Apéndice, págs. 162–174.

Estado, no existe expectativa razonable de intimidad cuando el documento ya está legítimamente en poder de éste, aun cuando se tratara de documentos confidenciales;[18] (5) que los peticionarios no expusieron fundamento alguno para cuestionar la legitimidad de una investigación legislativa con un propósito legítimo ni cuestionaron la pertinencia del requerimiento de entrega de copias de sus planillas dentro del ámbito de los propósitos que le fueron encomendados a la Comisión legislativa que los requiere, y (6) que el Tribunal de Primera Instancia no abusó de su discreción al declarar "sin lugar" la demanda de interdicto presentada por los demandantes de autos.

Inconforme, el 22 de diciembre de 2003 los demandantes de autos, peticionarios ante el Tribunal de Apelaciones, presentaron ante nos un recurso de *certiorari*, en el que señalaron los errores siguientes:

I

Erró el Honorable [Tribunal de Apelaciones] al determinar que no existe expectativa razonable de intimidad en la información contributiva de un individuo contrario a lo resuelto por este Honorable Tribunal en *Rodríguez v. Scotiabank*.

II

Erró el Honorable [Tribunal de Apelaciones] al determinar que la mera existencia de una ley autorizando la entrega de la información contributiva de un individuo derrota —como cuestión de derecho— la protección constitucional provista por el Art. II, Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico.

III

Erró el Honorable [Tribunal de Apelaciones] al determinar que existían suficientes garantías en cuanto a la razonabilidad y pertinencia del requerimiento en el Reglamento 5078 del Departamento de Hacienda y en la confidencialidad de la información mediante su entrega a una Comisión del Senado en vista ejecutiva.

---

[18] Sostuvo que dicha protección está dirigida contra el acceso que puedan tener a los documentos los ciudadanos privados y no otra entidad gubernamental autorizada en ley para requerir su inspección para cumplir su responsabilidad ministerial, como lo es el caso de la Comisión Especial.

## IV

Erró el Honorable [Tribunal de Apelaciones] al determinar que lo resuelto por este Honorable Tribunal en *H.M.C.A.; R.D.T. I; R.D.T. II*; y *Loubriel* en cuanto a la obligación de intervención por un magistrado en la entrega de información protegida por el derecho constitucional a la intimidad no aplica en el caso de que exista una ley autorizando la divulgación de la misma.

## V

Erró el Honorable [Tribunal de Apelaciones] al no emitir una orden protectora que limitara la entrega de la información a aquella estrictamente razonable y pertinente y estableciendo mecanismos adecuados para garantizar la confidencialidad de la información.

## VI

Erró el Honorable [Tribunal de Apelaciones] al determinar que la facultad investigativa del Senado es absoluta y no está sujeta a revisión por los tribunales o al determinar que tal intervención no fue solicitada por los demandantes-peticionarios.

## VII

Erró el Honorable [Tribunal de Apelaciones] al determinar que la mera notificación de un requerimiento de información cobijada por el derecho a la intimidad, sin exponer los fundamentos por los cuales se solicita (su razonabilidad y pertinencia) cumple con los requisitos del debido proceso de ley.

## VIII

Erró el Honorable [Tribunal de Apelaciones] al determinar que estaba en posición para dilucidar la controversia sin que existiese contestación a la demanda; sin que los senadores codemandados comparecieran ante el Tribunal de Apelaciones; y sin que justificaran la razonabilidad o pertinencia del requerimiento.

## IX

Erró el Honorable [Tribunal de Apelaciones] al imponer a los demandantes peticionarios la obligación de establecer la irrazonabilidad o falta de pertinencia del requerimiento cuando éstos nunca han sido informados de por qué se solicita la información ni por qué se justifica la intromisión en el derecho a la intimidad de los demandantes peticionarios.

## X

Erró el Honorable [Tribunal de Apelaciones] al determinar que no era necesario celebrar vista evidenciaria o que los demandantes-peticionarios no la solicitaron o no tenían derecho a ella.

### XI

Erró el Honorable [Tribunal de Apelaciones] al no permitir la inclusión de Rullán & Buxó, P.S.C. —el bufete de los demandantes-peticionarios— como interventora o concluir implícitamente que el Honorable T.P.I. no permitió su inclusión.

### XII

Erró el Honorable [Tribunal de Apelaciones] al no emitir el interdicto solicitado por los peticionarios. Petición de *certiorari*, págs. 10–11.

El 19 de diciembre de 2003, antes de que expidiéramos el auto de *certiorari* solicitado, el Lic. Edgardo Arroyo Ortiz, asesor técnico de la Secretaría Auxiliar de Legislación y Política Contributiva del Departamento de Hacienda, en representación del Secretario de Hacienda, entregó copia de la documentación en controversia a la Comisión Especial. El 29 de diciembre de 2003 el Secretario de Hacienda presentó ante nos escrito en el que solicitó la desestimación del presente recurso de *certiorari* por, alegadamente, haber advenido académico el asunto que presenta. Dicha solicitud fue declarada "no ha lugar" el 6 de febrero de 2004.

Consideradas las posiciones de ambas partes, nos encontramos en posición de resolver.

## II

Un asunto no es justiciable cuando se trata de resolver una cuestión política; cuando una de las partes no tiene capacidad jurídica para promover el pleito; cuando después de comenzado, hechos posteriores lo convierten en académico; cuando las partes buscan obtener una opinión consultiva, o cuando se promueve un pleito que no está maduro.[19]

---

[19] *Cruz v. Administración*, 164 D.P.R. *6788* (2005). Véanse, además: *Noriega v. Hernández Colón*, 135 D.P.R. 406, 422 (1994); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).

 Hemos expresado que los tribunales pierden su jurisdicción sobre un caso por academicidad cuando ocurren cambios fácticos o judiciales durante el trámite judicial de una controversia que tornan en académica o ficticia su solución.[20] En *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991), citando al profesor Tribe, expusimos que "[u]na vez se determina que un caso es académico los tribunales, por imperativo constitucional (ausencia de 'caso o controversia') o por motivo de autolimitación judicial, deben abstenerse de considerarlo en sus méritos".[21] Lo anterior es corolario del "elemental principio de que los tribunales existen únicamente para resolver controversias genuinas[,] surgidas entre partes opuestas que tienen un interés real en obtener un remedio que haya de afectar sus relaciones jurídicas".[22] Persigue, además, eludir el uso innecesario de recursos judiciales, asegurar la existencia de contiendas que sean vigorosamente litigadas y evitar precedentes innecesarios.[23] Al analizar la academicidad de un caso, debemos evaluar los eventos anteriores, próximos y futuros, para determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo.[24]

 Existen excepciones a la doctrina de academicidad. En virtud de ellas, los tribunales pueden atender un caso aunque haya habido cambios que parecieran tornar académica la controversia. Éstas son las siguientes: (1) cuando se plantea en el caso una cuestión recurrente o repetitiva del asunto planteado que tiende a

---

[20] *Cruz v. Administración,* supra.

[21] *Asoc. de Periodistas v. González,* supra, pág. 719.

[22] *E.L.A. v. Aguayo,* supra, págs. 558–559.

[23] *C.E.E. v. Depto. de Estado,* 134 D.P.R. 927 (1993); *Com. de la Mujer v. Srio. de Justicia,* supra.

[24] *San Antonio Maritime v. P.R. Cement Co.,* 153 D.P.R. 374 (2001); *Emp. Pur. Des., Inc. v. H.I.E.Tel.,* 150 D.P.R. 924 (2000); *Pres. del Senado,* 148 D.P.R. 737 (1999); *P.P.D. v. Gobernador I,* 139 D.P.R. 643 (1995); *Asoc. de Periodistas v. González,* supra; *Noriega v. Gobernador,* 122 D.P.R. 650 (1988).

evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero no tiene características de permanencia; (3) cuando aspectos de la controversia se tornan académicos, pero persisten importantes consecuencias colaterales, y (4) cuando se ha certificado por el tribunal una clase en conformidad con la Regla 20 de Procedimiento Civil[25] y la controversia se torna académica para un miembro de la clase, mas no para el representante de ésta.[26]

La excepción sobre el carácter recurrente o repetitivo de la controversia exige el estudio de tres factores: la probabilidad de la recurrencia, las partes involucradas en el procedimiento y la probabilidad de que la controversia evada la revisión judicial.[27] Para que opere la referida excepción, la recurrencia no tiene que ser entre las mismas partes.[28]

Además del carácter recurrente o repetitivo del asunto planteado y las partes en el litigio, dicho asunto debe ser de tal naturaleza que puede evadir su adjudicación o revisión. Esto sucede con mayor frecuencia en aquellas controversias que son, de por sí, de muy corta duración, *aunque pueden existir otras razones*, además de la brevedad cronológica, que ocasionen que una controversia sea capaz de eludir la revisión judicial.[29]

En el caso de autos, el Secretario de Hacienda entregó copia de la documentación en controversia a la Comisión Especial. Lo anterior no torna en académico el asunto ante nos. Somos del criterio de que la cuestión que se nos plantea tiene probabilidades sustanciales de repetirse. Veamos.

---

[25] 32 L.P.R.A. Ap. III.

[26] *Cruz v. Administración*, supra; *Asoc. de Periodistas v. González*, supra.

[27] Íd.

[28] *Com. de la Mujer v. Srio. de Justicia*, supra.

[29] *Cruz v. Administración*, supra; *Angueira v. J.L.B.P.*, 150 D.P.R. 10 (2000); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1998); *Asoc. de Periodistas v. González*, supra.

En virtud de la Sec. 1055(c) del Código de Rentas Internas, *supra*, la Comisión de Hacienda de la Cámara de Representantes, la Comisión de Hacienda del Senado o cualquier comisión autorizada de ambos cuerpos legislativos, puede solicitar al Secretario de Hacienda copia de "cualquier información de cualquier naturaleza contenida o expresada en cualquier planilla".([30]) La referida disposición estatutaria dispone, además, que el Secretario de Hacienda suministrará la información requerida por la Comisión legislativa.

Existe una probabilidad sustancial de que, como ocurrió en este caso, una comisión especial, sin la debida protección de los derechos constitucionales de los contribuyentes, requiera del Secretario de Hacienda copia de ciertas y determinadas planillas de contribución sobre ingresos, valiéndose de la referida disposición estatutaria. No sólo se cumple con el requisito del carácter recurrente de la controversia de autos, sino que, de repetirse, podría eludir la revisión judicial. Veamos.

El referido estatuto no prevé ni exige que *antes* de que el Secretario de Hacienda suministre copia de las planillas contributivas a la comisión legislativa que las requiera, esta última *notifique* al ciudadano que podría verse afectado por dicho requerimiento. Tampoco requiere que la comisión obtenga los documentos mediante una orden judicial. Dependería entonces de que, como en el caso ante nos, el ciudadano advenga en conocimiento de tal requerimiento, ya sea mediante la prensa escrita u otro medio, de que una comisión legislativa está solicitando copia de sus planillas contributivas al Secretario de Hacienda y acuda a la autoridad judicial en busca de un remedio. Peor aún, podría darse el caso de que el ciudadano, cuyas copias de sus planillas sean entregadas por el Departamento de Hacienda a la comisión legislativa, nunca se entere de tal re-

---

([30]) 13 L.P.R.A. sec. 8455(c)(1)(A).

querimiento o bien conozca de éste en un momento donde ya no puede acudir al foro judicial. Todo ello porque su información contributiva fue suministrada por el Secretario de Hacienda sin notificarle al contribuyente.

Hemos expresado en forma reiterada que al evaluar la procedencia de un interdicto preliminar examinaremos los criterios siguientes: (1) naturaleza de los daños que puedan ocasionarse a las partes de concederse o denegarse el interdicto; (2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el interdicto y, sobre todo, (5) el posible impacto sobre el interés público del remedio que se solicita.[31]

El propósito fundamental del interdicto preliminar surge de la razón de ser del cuarto criterio que se considera para conceder el remedio solicitado. Este propósito es mantener el *status quo* hasta que se celebre el juicio en sus méritos para que así no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de interdicto permanente o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio.[32] No obstante, el criterio en torno a la academicidad de tal causa de acción está, además, estrechamente relacionado con el segundo criterio, la irreparabilidad de los daños o la existencia de un remedio adecuado en ley.[33]

Aunque los tribunales pierden su jurisdicción sobre un asunto cuando ocurren cambios durante el trámite

[31] *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997); *Mun. de Ponce v. Gobernador*, 136 D.P.R. 776 (1994); *García v. World Wide Entmt. Co.*, 132 D.P.R. 378 (1992); *Cobos Liccia v. DeJean Packing Co., Inc.*, 124 D.P.R. 896 (1989); *Systema de P.R., Inc. v. Interface Int'l*, 123 D.P.R. 379 (1989).

[32] *Misión Ind. P.R. v. J.P. y A.A.A.*, supra.

[33] Íd.; *Mun. de Ponce v. Gobernador*, supra.

judicial de un caso que hacen que éste pierda actualidad, los cambios fácticos o judiciales a los que hace referencia la jurisprudencia no pueden ser, bajo ninguna circunstancia, resultado de una actuación del demandado para burlar nuestra facultad revisora respecto a un caso que está sub júdice.

El presente caso fue traído a tiempo ante la Rama Judicial. Luego de que el Tribunal de Primera Instancia denegara la demanda de interdicto, los aquí peticionarios acudieron en revisión al Tribunal de Apelaciones. El foro intermedio apelativo denegó la expedición del recurso de *certiorari* solicitado mediante una resolución emitida el *17 de diciembre de 2003* y notificada vía facsímil a las partes el *18 de diciembre de 2003*. El *19 de diciembre de 2003, un día* después de haberse notificado la determinación del Tribunal de Apelaciones y teniendo disponible la aquí peticionaria el remedio de acudir ante nos por no ser final y firme la determinación de ese foro, el Secretario de Hacienda le entregó copia de las planillas en cuestión a la Comisión Especial.([34]) Por ello, al expedirse el recurso de *certiorari* ante nos, el Secretario de Hacienda solicitó su desestimación por, alegadamente, haber advenido académico el asunto que presenta.

Nos preguntamos, ¿puede una actuación *provocada por la parte demandada, con el único propósito de intentar tornar en académica la presente controversia*, conseguir que abdiquemos de nuestra facultad revisora? Ante una alegación de violación de los derechos constitucionales de unos contribuyentes, ¿dejaremos en manos de la autoridad gubernamental, señalada por incurrir en tal conducta, la potestad de decidir cuándo un asunto puede ser revisado por este Tribunal? Contestamos dichas interrogantes en la negativa.

---

([34]) El presente recurso fue expedido por nosotros mediante resolución emitida el 24 de diciembre de 2003 y notificada vía facsímil a las partes el 29 de diciembre de 2003.

Tenemos ante nos un caso que no fue traído de forma imprevista ni litigado a última hora. Los alegados cambios fácticos o judiciales que —alegan los aquí recurridos— tornaron en académico el asunto planteado, fueron provocados por el Departamento de Hacienda, parte aquí recurrida, con el *único* propósito de intentar tornar en académica la presente controversia. No podemos permitir que con tal proceder se eluda nuestra revisión de tal asunto.

### III

Nos corresponde determinar si, a la luz de lo resuelto en los casos *R.D.T. Const. Corp. v. Contralor I*, supra, *R.D.T. Const. Corp. v. Contralor II*, supra, *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, y *Pueblo v. Loubriel, Suazo*, supra, los peticionarios tienen una expectativa razonable de intimidad con respecto a sus planillas de contribución sobre ingresos cuando, *en virtud de una ley que concede dicha facultad*, una comisión legislativa del Senado requiere copia de las referidas planillas al Secretario de Hacienda. La referida ley no exige que se le notifique al contribuyente del requerimiento. Tampoco exige la intervención de un juez, previo al descubrimiento, para determinar la razonabilidad y pertinencia del requerimiento en cuestión. Veamos.

A. *Poder investigativo de la Rama Legislativa.* La Sec. 1 del Art. III de la Constitución del Estado Libre Asociado de Puerto Rico dispone lo siguiente: "El Poder Legislativo se ejercerá por una Asamblea Legislativa, que se compondrá de dos Cámaras —el Senado y la Cámara de Representantes— cuyos miembros serán elegidos por votación directa en cada elección general."[35]

---

[35] Art. III, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 365.

La función de los parlamentos modernos en el proceso gubernativo es amplia y abarcadora.(³⁶) Para desempeñar eficientemente sus funciones, los organismos legislativos han recurrido a su poder de investigación.(³⁷) Dicho poder de investigación es inherente al poder constitucional de los organismos legislativos, ya que "la facultad de investigar es parte inseparable de la de legislar".(³⁸) Por ello, el ejercicio del poder de investigación depende, en gran medida, de la facultad que tienen los cuerpos legislativos para citar testigos a comparecer y para traer los documentos pertinentes a las vistas, convocadas al amparo de una delegación autorizada por el cuerpo correspondiente.(³⁹) Ahora bien, dicho poder no es absoluto.

En el ejercicio de nuestro poder como intérpretes supremos de la Constitución del Estado Libre Asociado de Puerto Rico (Constitución de P.R.), nos corresponde definir el ámbito del referido poder investigativo. La investigación en cuestión tiene que cumplir con un propósito legislativo y con los postulados de la Constitución de P.R.(⁴⁰) No podemos ignorar que "ni los cuerpos y órganos legislativos ni los funcionarios ejecutivos pueden convertirse en jueces de sus propios poderes".(⁴¹) Por ello, cuando se cuestione el uso del poder de investigación de la Rama Legislativa, debemos determinar lo siguiente: (1) si el referido poder investigativo ha sido ejercido arbitrariamente (pues toda investigación debe perseguir un propósito legislativo) y (2) si el ejercicio de ese poder lesiona derechos individuales.(⁴²) De ese

---

(³⁶) *Hernández Agosto v. Betancourt*, 118 D.P.R. 79 (1986); J. Trías Monge, *Historia Constitucional de Puerto Rico*, Río Piedras, Ed. U.P.R., 1982, Vol. III, pág. 136.

(³⁷) Íd.

(³⁸) *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576, 590 (1983).

(³⁹) *Hernández Agosto v. Betancourt*, supra.

(⁴⁰) Íd., pág. 82, citando a *Peña Clos v. Cartagena Ortiz*, supra; *Santa Aponte v. Srio del Senado*, 105 D.P.R. 750 (1977); *Banco Popular, Liquidador v. Corte*, 63 D.P.R. 66 (1944).

(⁴¹) *Peña Clos v. Cartagena Ortiz*, supra, pág. 591.

(⁴²) Íd.

modo nos aseguramos que, en el desempeño de sus funciones, la Rama Legislativa no utilice su poder para privar a la ciudadanía de las prerrogativas consagradas en la Carta de Derechos de la Constitución de P.R.(43)

**1. *Facultad de la Asamblea Legislativa para requerir documentos***

En aras de promover y hacer viable el referido poder investigativo, el Código Político incorpora estatutariamente la referida facultad investigativa. Dicho cuerpo estatutario dispone el procedimiento que han de seguir las comisiones legislativas para requerir la comparecencia de testigos y la correspondiente producción de documentos. En virtud de dicho procedimiento, las comisiones legislativas pueden requerir la comparecencia de testigos y la correspondiente producción de documentos a través de una citación, expedida en conformidad con los requisitos expuestos en el Art. 31 del referido Código.(44) Una vez expedida la citación, ésta será diligenciada según prescriba el correspondiente reglamento de la comisión involucrada o el respectivo cuerpo legislativo.(45) Del mismo modo, el referido estatuto provee dos procedimientos que tienen a su disposición las cámaras legislativas para recurrir a los tribunales para vindicar su autoridad y obtener una orden para la comparecencia de un testigo que se ha negado a comparecer, testificar o a producir los documentos requeridos.(46)

Con relación a las planillas contributivas, la Sec. 1055 del Código de Rentas Internas, 13 L.P.R.A. sec. 8455, provee, en lo pertinente, lo siguiente:

---

(43) Íd., págs. 586–587.

(44) 2 L.P.R.A. sec. 151.

(45) 2 L.P.R.A. sec. 152.

(46) Véase 2 L.P.R.A. secs. 151–155. De incumplir la parte convenida con la citación que fuese diligenciada a su nombre, los Arts. 34 y 34a del Código Político proveen los mecanismos correspondientes para que la Asamblea Legislativa, previa intervención de la Rama Judicial, pueda penalizar dicho proceder mediante desacato criminal o civil. 2 L.P.R.A. secs. 154 y 154a.

(a) *Documento público e inspección*

(1) Las planillas rendidas bajo esta parte sobre las cuales la contribución ha sido determinada por el Secretario o cualquier otro documento relacionado con un contribuyente constituirán documentos públicos pero, excepto según más adelante se provee, estarán sujetas a inspección solamente mediante orden del Gobernador de Puerto Rico previa demostración de justa causa para ello, y bajo las reglas y reglamentos prescritos por el Secretario.

(2) Además, todas las planillas rendidas bajo esta Parte constituirán documentos públicos y estarán sujetas a inspección y examen públicos en la medida que se autorice en las reglas y reglamentos promulgados por el Secretario.

(3) Siempre que una planilla estuviere sujeta a la inspección de cualquier persona se expedirá, a solicitud, copia simple o certificada de la misma a dicha persona bajo reglas y reglamentos prescritos por el Secretario. El Secretario fijará un derecho razonable por suministrar dicha copia.

. . . . . . . .

(c) *Inspección por comisiones de la Asamblea Legislativa*

(1) *Comisiones de hacienda y comisiones especiales*

(A) A solicitud de la Comisión de Hacienda de la Cámara de Representantes, de la Comisión de Hacienda del Senado, de una comisión seleccionada por el Senado o de la Cámara especialmente autorizada para investigar planillas por resolución del Senado o de la Cámara, o de una comisión conjunta así autorizada mediante resolución concurrente, *el Secretario suministrará a dicha comisión reunida en sesión ejecutiva cualquier información de cualquier naturaleza contenida o expresada en cualquier planilla.*

(B) Cualquiera de dichas comisiones actuando directamente como comisión, o a través de aquellos examinadores o agentes que designare o nombrare, tendrá el derecho de inspeccionar cualquiera o todas las planillas en aquellas ocasiones y en aquella forma que así lo determine.

(C) Cualquier información así obtenida por la comisión *podrá ser sometida al Senado o a la Cámara, o al Senado y la Cámara, según fuere el caso.* (Énfasis suplido.)

En conformidad con la referida disposición, el 3 de abril de 1998 el Secretario de Hacienda promulgó el Reglamento Núm. 5780 de Departamento de Hacienda. Mediante dicho cuerpo reglamentario, se estableció un procedimiento para implantar, entre otras, lo dispuesto en la mencionada Sec. 1055 del Código de Rentas Internas. El

Art. 1055-4 del referido reglamento dispone, en lo pertinente, lo siguiente:

> Artículo 1055-4. — Inspección de planillas por comisiones de la Asamblea Legislativa. — La Comisión de Hacienda de la Cámara de Representantes o del Senado, o una comisión seleccionada del Senado o de la Cámara, tiene derecho, ya sea actuando directamente en calidad de comisión o por intermedio de examinadores y agentes que ella designe o nombre, a inspeccionar las planillas anuales de ingreso de cualquier contribuyente, en las fechas y del modo que determine dicha comisión. El Secretario y cualquier empleado del Departamento *están obligados* a suministrar *cualquier* información de *cualquier* carácter contenida o demostrada en *cualquiera* de dichas planillas, que esas comisiones soliciten. Las comisiones de la Asamblea Legislativa autorizadas por la Sección 1055(c) del Código a inspeccionar planillas, *podrán someter cualquier información así obtenida al Senado o a la Cámara, o a ambos cuerpos legislativos, según fuere el caso.* (Énfasis suplido.) Reglamento Núm. 5780, *supra*, pág. 90.

La referida disposición reglamentaria no establece procedimiento alguno para determinar la pertinencia y razonabilidad del requerimiento ni una garantía de que éste no sea arbitrario. Tampoco permite al Secretario de Hacienda negarse a producir la información requerida por la Legislatura por ser irrazonable el requerimiento.

B. *La protección constitucional contra detenciones, registros y allanamientos irrazonables, y la expectativa razonable de intimidad de los individuos en relación con sus planillas de contribución sobre ingresos*

El derecho a la intimidad, reconocido en la Sec. 10 del Art. II de la Constitución de P.R.,([47]) es consustancial a la declaración constitucional relativa a la inviola-

---

([47]) Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 310–311. La protección constitucional al ciudadano contra registros, allanamientos e incautaciones irrazonables, también se reconoce en la Cuarta Enmienda de la Constitución de Estados Unidos. La referida disposición constitucional es similar al primer párrafo de nuestra Sec. 10 del Art. II, *supra*. En cambio, nuestra Constitución es más amplia al prohibir la interceptación telefónica e incluir una cláusula de exclusión de evidencia.

bilidad de la dignidad del ser humano consagrada en el Art. II, Sec. 8 de la Constitución de P.R., L.P.R.A., Tomo 1. La referida Sec. 8 protege a las personas de ataques abusivos a su honra, a su reputación y a su vida privada y familiar.[48]

En Puerto Rico, el derecho a la intimidad tiene un alcance más amplio que en el sistema federal de Estados Unidos.[49] Hemos resuelto que el derecho a la intimidad y a la dignidad del ser humano puede hacerse valer entre personas privadas sin que sea necesario demostrar la existencia de acción estatal.[50]

Como señalamos en *Pueblo v. Loubriel, Suazo*, supra, el derecho a la intimidad del individuo está protegido por varias disposiciones de la Constitución de P.R. Entre ellas, la Sec. 10 del Art. II, *supra*, que dispone lo siguiente:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
> No se interceptará la comunicación telefónica.
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

---

[48] Véase D. Nevares-Muñiz, *Sumario de derecho procesal penal puertorriqueño*, 6ta ed. rev., San Juan, Inst. Desarrollo del Derecho, 2001, págs. 69–98.

[49] La Cuarta Enmienda de la Constitución de Estados Unidos, según interpretada por la Corte Suprema federal, constituye la protección mínima que están obligados los estados a reconocer en esta zona. Por ello, hemos reconocido que, de igual manera que los estados de la Unión, tenemos la facultad de ampliar las garantías contra registros y allanamientos irrazonables más allá de la Cuarta Enmienda. Nevares-Muñiz, *op cit.*; E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1995, Vol. 1, pág. 223; *Pueblo v. Rivera Collazo*, 122 D.P.R. 408 (1988); *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988); *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986).

[50] Nevares-Muñiz, *op cit.*, págs. 71–72. Véanse además: *Belk v. Martínez*, 146 D.P.R. 215 (1998); *Pueblo v. Santiago Feliciano*, 139 D.P.R. 361 (1995); *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978); *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436 (1975); *Cortes Portalatín v. Hau Colón*, 103 D.P.R. 734 (1975).

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

La referida disposición constitucional "provee a las personas una protección en contra de los ataques abusivos, registros, incautaciones y allanamientos irrazonables. Su propósito es proteger el derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado".[51] Los tres objetivos históricos que persigue la referida garantía constitucional son los siguientes: proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura de un juez entre los funcionarios públicos de las Ramas Ejecutiva y Legislativa, y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intervención con la intimidad del individuo.[52]

Ahora bien, la referida protección no opera automáticamente por el mero hecho de que ocurra una intervención del Estado con un individuo. La garantía constitucional protege fundamentalmente a las personas y no a lugares. Para que ésta se active, es necesario determinar si existe un interés personal del individuo sobre el lugar u objeto allanado, incautado o registrado, de modo que exista una expectativa razonable de intimidad. Es esta expectativa razonable de intimidad la que es protegida por la disposición constitucional. Por esto, si estamos ante la intervención del Estado con el individuo, hay que determinar si la persona, en efecto, tiene el derecho de abrigar la expectativa razonable de que su intimidad sea respetada para que entonces sea acreedor de la protección constitucional.[53]

---

[51] *Pueblo v. Loubriel, Suazo*, supra, pág. 379, citando a *Pueblo v. Yip Berríos*, 142 D.P.R. 386 (1997), y a *Pueblo v. Ramos Santos*, 132 D.P.R. 363 (1992).

[52] *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984).

[53] *Pueblo v. Loubriel, Suazo*, supra. Véanse, además: *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394 (1983); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979).

En lo que nos concierne, hemos resuelto que las personas poseen un derecho de intimidad sobre la información que tengan las instituciones bancarias, sobre su vida privada, sus transacciones y sus negocios. El fundamento detrás de ello es que dicha información revela los patrones y estilos de vida de cada uno de los clientes que utilizan los servicios de una institución bancaria, así como su situación económica.[54]

En *R.D.T. Const. Corp. v. Contralor I*, supra, dijimos que mediante dicha información, se puede determinar a qué se dedica la persona investigada, los lugares que frecuenta, los bienes que adquiere, a qué partido o grupo político contribuye, los periódicos y las revistas que lee con frecuencia, la iglesia a la cual hace donativos, las asociaciones a las cuales pertenece, las tiendas y los establecimientos donde compra, los médicos que visita y otra información de naturaleza íntima.[55] Añadimos que, en conformidad con la protección que la Constitución de P.R. provee a los ciudadanos contra intervenciones irrazonables del Estado, ni las empresas ni los individuos tienen por qué presumir que al proveer información a los bancos están renunciando a su expectativa de intimidad sobre ella.[56]

Resolvimos que en aquellos casos en los que las instituciones gubernamentales tengan el poder para compeler a personas naturales o jurídicas a suministrar información, sobre la cual terceros puedan abrigar un derecho a la intimidad tienen, necesariamente, que notificar al individuo o, en la alternativa, exigir los documentos a través de una orden judicial.[57] Es decir, las entidades gubernamentales, cuando necesitan inspeccionar información eco-

---

[54] *R.D.T. Const. Corp. v. Contralor I*, supra.

[55] *Pueblo v. Loubriel, Suazo*, supra.

[56] *R.D.T. Const. Corp. v. Contralor I*, supra, pág. 443.

[57] Íd.; *R.D.T. Const. Corp. v. Contralor II*, supra.

nómica de los individuos, sobre la cual existe una expectativa razonable de intimidad, tienen a su disposición dos mecanismos. Primero, pueden acudir directamente a los tribunales para obtener una orden mediante la cual requieran la entrega de la información solicitada, de acuerdo con las normas pautadas en *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra. Mediante el uso de la vía judicial, debe cumplirse con los requisitos de autoridad legal, pertinencia y relación razonable con el objeto de la investigación. Segundo, el organismo gubernamental tiene que notificar al individuo del requerimiento hecho a un tercero de su información económica protegida constitucionalmente. Es decir, aunque puedan emitir una citación con el propósito de requerir información de terceros, cuando se trata de información protegida por el derecho a la intimidad, tiene que notificar, con una copia de la citación, a la persona investigada. Este mecanismo pretende asegurar que en estos casos los tribunales tengan la oportunidad de evaluar la razonabilidad del requerimiento y determinar su procedencia, si quien es investigado se siente agraviado en su derecho a la intimidad y decide impugnarlo. Mediante dicho trámite, se asegura que una figura neutral pueda evaluar la razonabilidad de tal requerimiento, en protección del derecho a la intimidad de las personas.[58]

En *Rodríguez v. Scotiabank de P.R.*, supra, resolvimos que aunque la prohibición de divulgar el contenido de las planillas no equivale a un privilegio evidenciario, éstas no pueden ser objeto de descubrimiento de prueba indiscriminado. Sostuvimos que sólo se podrá divulgar la información contenida en las planillas que sea *estrictamente pertinente* a la controversia en cuestión. Todo ello porque *el derecho a la intimidad* reconocido en la Consti-

---

[58] *R.D.T. Const. Corp. v. Contralor II*, supra, págs. 863–864.

tución de P.R. exige que se proteja al contribuyente contra la opresión, el hostigamiento y la perturbación.[59]

## IV

En el caso de autos, el foro intermedio apelativo entendió que en virtud de la R. del S. Núm. 82,[60] y de la Sec. 1055 del Código de Rentas Internas, *supra*, la Comisión Especial estaba expresamente facultada por ley para requerir copia de las planillas de los aquí peticionarios como parte de su investigación. Entendió que no aplicaban al presente caso los requisitos enunciados por este Tribunal en *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, en *R.D.T. Const. Corp. v. Contralor I*, supra, en *R.D.T. Const. Corp. v. Contralor II*, supra, y en *Pueblo v. Loubriel, Suazo*, supra. Sostuvo que, por disposición expresa del Código de Rentas Internas, las planillas contributivas son documentos públicos sobre los cuales es "evidente" que los contribuyentes no tienen una expectativa legal razonable de que copia de éstas no se le divulguen a una comisión legislativa expresamente autorizada para requerir su entrega. Añadió que el Art. 1055-4 del Reglamento Núm. 5780 del Departamento de Hacienda (creado para poner en vigor la Sec. 1055 del Código de Rentas Internas), de 3 de abril de 1998, establece que el Secretario de Hacienda se cerciorará de que se cumplan con los requisitos legales para su requerimiento y entrega. Entendió dicho foro que lo anterior garantiza, antes de la divulgación de la información de las planillas, que el Secretario de Hacienda se cerciorará de que se cumplan con las exigencias legales para su requerimiento y entrega, en los casos dispuestos por ley.

La referida disposición reglamentaria no ofrece procedimiento alguno que pueda ser utilizado por el Secretario de

---

[59] *Rodríguez v. Scotiabank de P.R.*, supra, pág. 216.

[60] Según enmendada por la R. del S. Núm. 3559 de 22 de octubre de 2003.

Hacienda para determinar la pertinencia y razonabilidad del requerimiento, ni para velar por que éste no sea arbitrario. Establece que el Secretario de Hacienda está *obligado* a producir copia de las planillas requeridas por una comisión legislativa.

Por otro lado, actuó incorrectamente el Tribunal de Apelaciones al sostener que por disposición expresa del Código de Rentas Internas las planillas de contribución sobre ingresos son documentos públicos sobre los cuales los contribuyentes no tienen una expectativa razonable de que su contenido no se divulgue. Su conclusión equivale a que cuando la Rama Legislativa, mediante legislación, autoriza la divulgación de las referidas planillas, debemos ignorar la garantía constitucional que protege el derecho del individuo a la intimidad. Tal conclusión es claramente errónea.

 Como señalamos en *E.L.A. v. Coca Cola Bott. Co.*, supra, la simple autorización de un registro por la Asamblea Legislativa no obvia la protección constitucional reconocida a toda persona en nuestro esquema constitucional. Sostener tal resultado implicaría ignorar lo reconocido por esta Curia en *Rodríguez v. Scotiabank de P.R.*, supra. Allí dijimos, no solamente que las planillas de contribución sobre ingresos están cobijadas por el derecho constitucional a la intimidad, sino que éstas no pueden ser utilizadas por el Estado para perseguir a los ciudadanos. ¿Cómo podría garantizarse que en el ejercicio de su poder constitucional la Asamblea Legislativa no abuse de sus prerrogativas, si permitimos que ésta sea juez y parte de sus facultades y de su ejercicio sobre el individuo?

 Concluimos que los peticionarios tenían una expectativa razonable de intimidad sobre las copias de sus planillas de contribución sobre ingresos, que fueron solicitadas por la Comisión Especial. Dicha expectativa razonable de intimidad, que protege la información contributiva de toda persona, natural o jurídica, no desaparece ante la

existencia de una ley o cuerpo reglamentario que autorice su divulgación sin proteger las garantías constitucionales reconocidas en nuestro ordenamiento jurídico. Todo individuo que somete al Departamento de Hacienda sus planillas lo hace con un propósito específico y limitado, y en cumplimiento de una obligación impuesta por ley. Al hacerlo, no renuncia a su expectativa de intimidad respecto a la información contenida en sus planillas.

La obtención por la Legislatura de información de los ciudadanos (sea contributiva o bancaria) en la que existe una expectativa razonable de intimidad, tiene que cumplir con lo establecido en *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, en *R.D.T. Const. Corp. v. Contralor I*, supra, y en *R.D.T. Const. Corp. v. Contralor II*, supra. El ejercicio del poder investigativo de la Rama Legislativa no queda al margen de los postulados constitucionales que componen nuestro ordenamiento jurídico.[61]

Así, cuando la Rama Legislativa pretenda obtener copia de ciertas y determinadas planillas de contribución sobre ingresos en el curso de una investigación, tiene a su haber dos mecanismos. Pueden acudir directamente a los tribunales para obtener una orden que requiera la entrega de la información solicitada, de acuerdo con las normas pautadas en *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra. Mediante el uso de la vía judicial, debe cumplirse con los requisitos de autoridad legal, pertinencia y relación razonable con el objeto de la investigación. Cabe puntualizar que dicho mecanismo no exime a la Rama Legislativa de notificarle al individuo afectado sobre dicho requerimiento. Por el contrario, si decide emitir una citación para que el Secretario de Hacienda entregue ciertas y determinadas copias de las planillas contributivas relacionadas con una investigación, la persona afectada deberá ser notificada formalmente de tal requerimiento por la re-

---

[61] Véase *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra.

ferida comisión. Dicha notificación deberá ser emitida con razonable anticipación y contener lo siguiente: información específica y detallada que exprese la razón, el propósito y la pertinencia de la solicitud, a la luz de la investigación que se esté llevando a cabo y la disposición legal que faculta a la comisión legislativa en cuestión para realizar tal requerimiento. Lo anterior permitirá que el ciudadano tenga una oportunidad razonable de cuestionar dicho requerimiento ante la autoridad judicial competente, si se siente agraviado.

▬▬ Por lo tanto, interpretamos las disposiciones del Código de Rentas Internas de modo que garanticen el derecho a la intimidad que, sobre su información contributiva, tienen todos los ciudadanos. Con tal conclusión nos reafirmamos en el postulado fundamental de hermenéutica constitucional: que el Poder Judicial debe esforzarse por lograr interpretaciones congruentes y compatibles con el mantenimiento de la constitucionalidad de una ley.[62]

Resolver lo contrario tendría el efecto de permitir a la Rama Legislativa un acceso irrestricto e indiscriminado de información personal de los contribuyentes, en violación de sus derechos constitucionales. El mandato constitucional de la Rama Legislativa puede descargarse garantizando los derechos constitucionales del individuo, que limitan a todo actor público.

Por último, arguyen los recurridos que si los requisitos establecidos en *R.D.T. Const. Corp. v. Contralor I*, supra, y en *R.D.T. Const. Corp. v. Contralor II*, supra, aplicaran al presente caso, el trámite seguido ante nos ha cumplido con *ambas* alternativas. Es decir: (1) que medió la intervención, previo al descubrimiento, de un funcionario imparcial y (2) que la Comisión Especial notificó a los aquí peticiona-

---

[62] *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653 (1990); *P.R.P. v. E.L.A.*, 115 D.P.R. 631 (1984); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981); *Mari Bras v. Alcaide*, 100 D.P.R. 506 (1972). Véanse, además: *Rosario v. Toyota*, 166 D.P.R. 1 (2005), opinión de conformidad emitida por el Juez Asociado Señor Rebollo López.

rios del requerimiento hecho al Secretario de Hacienda. Alegan que, por ser el Secretario de Hacienda un funcionario independiente, es un ente "separado" que pasa juicio sobre la razonabilidad del pedido y el cumplimiento de la ley. Añade que, *al igual que ocurre cuando media una intervención del foro judicial*, el Secretario de Hacienda se impone como figura imparcial que provee suficientes garantías en contra de la arbitrariedad del pedido de la Rama Legislativa. De su faz, este argumento es improcedente por ser *claramente* contrario al principio de separación de poderes que permea nuestro sistema republicano de gobierno.[63]

Arguyen, además, que se cumplió con el requisito alterno de notificación al contribuyente porque, al presentar la demanda de interdicto, los peticionarios tenían conocimiento sobre tal requerimiento. ¿Es que acaso el debido proceso de ley, que exige una notificación adecuada, se satisface por el mero hecho de que el contribuyente se entere de un requerimiento como el presente a través de la prensa escrita? Contestamos dicha interrogante en la negativa.

Respecto al cumplimiento con el requisito de notificación al ciudadano, alegan que cumplieron con éste. Arguyen que la Comisión Especial adelantó vía facsímil copia de la Moción en Cumplimiento de Orden al representante legal de los aquí peticionarios. Entienden que como la referida moción incluía, como *exhibit*, copia de la citación hecha por la Comisión Especial (en la que requería al Secretario de Hacienda copia de las planillas de los aquí peticionarios) éstos fueron notificados antes de la entrega. Adviértase que la referida Moción en Cumplimiento de Orden fue presentada ante el foro de primera instancia el 2 de diciembre de 2003. Es decir, la alegada notificación fue hecha *luego de que se instara en su contra la demanda que dio comienzo a la presente acción*. La copia de la carta que se acompañó con la moción, que iba *dirigida al Secretario*

---

[63] *Pueblo v. Pérez Casillas*, 126 D.P.R. 702 (1990).

*de Hacienda* (no a los peticionarios), no cumplió con el requisito *constitucional* de previa notificación al contribuyente. Dicho escrito no iba dirigido a los peticionarios, sino al Secretario de Hacienda. Tampoco indicaba por qué las copias de las planillas de contribución de ingresos de los aquí peticionarios eran pertinentes a la investigación que llevaba a cabo la referida Comisión Especial.[64]

¿No era razonable que el referido requerimiento señalara al contribuyente en forma específica y detallada las razones por las cuales la comisión legislativa, diseñada y creada con el propósito de investigar la situación existente *en la Corporación de Puerto Rico para la Difusión Pública (W.I.P.R.)*, necesitaba copias de sus planillas para lograr ese fin? Entendemos que no sólo era razonable, sino imprescindible, por imperativo del derecho constitucional a un debido proceso de ley.

Ante la acción oportuna de los aquí peticionarios de acudir a la autoridad judicial en busca de la protección de sus derechos constitucionales, antes de que las referidas copias de las planillas fueran entregadas a la Comisión Especial, el Tribunal de Primera Instancia debió *exigir* al Senado de Puerto Rico que demostrara la razonabilidad y pertinencia del requerimiento dirigido al Secretario de Hacienda por una de sus comisiones.

## V

Por los fundamentos antes expuestos, *revocamos al Tribunal de Apelaciones y al Tribunal de Primera Instancia. Se ordena al Senado de Puerto Rico devolver a los peticionarios la copia certificada de sus planillas de contribución sobre ingresos, de acuerdo con lo pautado.*

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la cual se unió la Jueza Asociada

---

[64] Véase Carta al Hon. Juan A. Flores Galarza de 1 de diciembre de 2003, *Exhibit* 4 de la Moción en cumplimiento de orden, Apéndice, págs. 81–82.

Señora Fiol Matta. La Juez Asociada Señora Rodríguez Rodríguez seinhibió.

— O —

Opinión disidente emitida por el Juez Presidente Señor Hernández Denton, a la cual se une la Jueza Asociada Señora Fiol Matta.

Disentimos, pues entendemos que la controversia ante nos es claramente académica, por lo que en la opinión del Tribunal se entra en los méritos de una controversia que cesó de ser justiciable.

I

En noviembre de 2003 el Lcdo. Luis G. Rullán Marín (licenciado Rullán Marín), su esposa y la Sociedad Legal de Gananciales compuesta por ambos, presentaron una demanda de sentencia declaratoria y una petición de interdicto. La referida acción fue instada contra el entonces presidente del Senado, Hon. Antonio J. Fas Alzamora, la Comisión Especial para Investigar la Situación Existente en la Corporación de Puerto Rico para la Difusión Pública (Comisión) y el entonces Secretario de Hacienda, Hon. Juan A. Flores Galarza (Secretario).

En la demanda, el licenciado Rullán Marín solicitó, en síntesis, que el Tribunal de Primera Instancia ordenara al Secretario a no entregar copias de ciertas de sus planillas contributivas a la Comisión. Alegó que dichos documentos constituyen información confidencial sobre la que tenía una expectativa razonable de intimidad. En vista de ello, adujo que cualquier requerimiento de producción de aquéllos debía ser obtenido mediante una orden judicial o una notificación previa a las partes afectadas. Por último, sostuvo que, ya que el Estado no solicitó las planillas en controversia mediante una orden judicial ni notificó de ello a

las partes afectadas, el Secretario estaba impedido de entregarle dichos documentos a la Comisión.

Luego de la celebración de una vista, el foro de instancia denegó la demanda de interdicto, pues concluyó que la Comisión había notificado del requerimiento en cuestión a las partes afectadas. Inconforme, el licenciado Rullán Marín acudió ante el Tribunal de Apelaciones mediante una petición de *certiorari*. El foro apelativo denegó expedir el auto solicitado. Concluyó, en esencia, que las planillas son documentos públicos sobre los que un individuo no tiene expectativa legítima de intimidad frente al Estado.

Aún insatisfecho, el licenciado Rullán Marín acudió ante nos solicitando la revocación del dictamen del Tribunal de Apelaciones. Así las cosas, compareció ante nos el Secretario solicitando la desestimación de la petición de *certiorari* presentada en el caso de autos, ya que la controversia se había tornado académica; ello debido a que las planillas en cuestión ya le habían sido entregadas a la Comisión.

La opinión de este Tribunal resuelve que la presente controversia presenta un asunto justiciable. Fundamentan dicha conclusión en que ésta no se ha convertido en académica porque es "susceptible de repetirse y capaz de evadir revisión judicial". Por ende, se resuelve el caso en sus méritos y se determina que la Comisión no cumplió con el requisito de notificar adecuadamente a las partes afectadas del requerimiento de documentos solicitado.

Contrario a lo resuelto en la opinión del Tribunal, somos del criterio de que la presente controversia se tornó académica debido a la entrega de las planillas a la Comisión. Evidentemente, ello hace imposible que este Tribunal le conceda al licenciado Rullán Marín lo solicitado, o sea, que evitemos que el Secretario le entregue las planillas a la Comisión. Por lo tanto, nos parece que cualquier pronunciamiento que hoy emitamos en el caso de autos inevitablemente redundará en una mera opinión consultiva, pues no

tiene posibilidad alguna de afectar la relación actual entre las partes.

Por otro lado, tampoco estamos de acuerdo con que el presente pleito presenta una controversia "susceptible de repetirse y capaz de evadir revisión judicial". Estamos convencidos de que cualquier posibilidad de que el asunto ante nos se repita es especulativa. De otra parte, aunque se repitiera la controversia, estimamos que no existe una probabilidad real de que ésta evada nuevamente la revisión judicial. *Veamos.*

## II

La academicidad es una doctrina de autolimitación judicial. Mediante ella se pretende examinar la relación entre eventos pasados y la situación actual de las partes para determinar si aún existe un caso o controversia que satisfaga los requisitos de justiciabilidad. Un caso se torna académico cuando, en atención a un cambio fáctico o en el derecho aplicable, ha perdido su característica de ser una controversia presente y viva. En virtud de ello, su resolución se convertiría en una opinión consultiva. Esto se debe a que, en el momento en que un caso se convierte en académico, deja de existir una relación adversativa entre las partes y, por ende, se pierde el incentivo para litigar vigorosamente el pleito. Véase R. Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. 1, pág. 104.

Mediante la doctrina de la academicidad se persigue adelantar tres propósitos principales, a saber: (1) evitar el uso innecesario de los recursos judiciales; (2) asegurar suficiente contienda adversativa sobre las controversias para que ambos lados sean competente y vigorosamente presentados, y (3) evitar un precedente innecesario. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994).

A pesar de que, como norma general, un tribunal debe

de abstenerse de entrar en los méritos de un caso que se ha tornado académico, existen varias circunstancias que, excepcionalmente, permiten que un caso técnicamente académico sea revisado judicialmente. A estos efectos, hemos reconocido que los tribunales pueden adjudicar controversias académicas que son susceptibles de repetirse y capaces de evadir revisión judicial. *Emp. Pur. Des., Inc. v. H.I.E.Tel.*, 150 D.P.R. 924 (2000).

La aplicabilidad de la excepción depende del saldo que arroje el examen de los tres criterios siguientes: (1) probabilidad de la recurrencia, (2) identidad o no de las partes involucradas en el posible pleito recurrente futuro, y (3) probabilidad de que la controversia evada revisión judicial. *P.N.P. v. Carrasquillo*, 166 D.P.R. 70 (2005).

En cuanto a la posibilidad de repetición de la controversia, es necesario que exista una probabilidad real y demostrable de que el caso pueda volver a ocurrir. No basta, por lo tanto, con probar que existe una mera posibilidad física o teórica de que la controversia se repita. *Murphy v. Hunt*, 455 U.S. 478 (1982).

De otra parte, también es necesario que, por la naturaleza efímera de los hechos que provocan la controversia, sea difícil que ésta logre ser dilucidada por los tribunales. *Noriega v. Hernández Colón*, supra. Sin embargo, no se trata de que exista una probabilidad altamente especulativa de que de repetirse el asunto éste nuevamente evada revisión judicial. Se requiere, por ende, probar que hay una "probabilidad sustancial" de que la controversia cese de existir antes de que sea revisada en los méritos por los tribunales. *Honig v. Doe*, 484 U.S. 305 (1988).

Con este marco normativo en mente, pasemos a examinar los hechos que tenemos ante nos.

### III

La opinión de este Tribunal concluye que el presente pleito todavía presenta un asunto justiciable, ya que es

capaz de repetirse y de evadir la revisión judicial. No podemos avalar dicha conclusión.

El licenciado Rullán Marín solicitó en su demanda que el foro de instancia le ordenara al Secretario a no entregarle a la Comisión ciertas de sus planillas de contribución sobre ingresos. El Tribunal de Primera Instancia se negó a conceder lo solicitado por entender que la Comisión solicitó los referidos documentos de forma constitucionalmente permisible. El foro apelativo confirmó dicho dictamen. Así las cosas, el Secretario le entregó a la Comisión las planillas solicitadas.

En vista de lo anterior, y habiendo pasado ya más de dos años a partir de que el Tribunal de Apelaciones emitiera el referido dictamen, resulta obvio que el remedio que solicitó el licenciado Rullán Marín ya no le puede ser concedido. Es decir, este Tribunal está imposibilitado de ordenarle ahora al Secretario que no entregue lo que hace par de años ya entregó.

Por ello, la resolución del presente caso no tiene posibilidad alguna de afectar la relación actual entre el licenciado Rullán Marín y la Comisión. Consecuentemente, nos parece inevitable concluir que cualquier pronunciamiento de este Tribunal en cuanto a la controversia de autos constituye una mera opinión consultiva.

De otra parte, nos parece que no existe una probabilidad real o una expectativa razonable de que el asunto que nos concierne se vuelva a repetir. La Comisión fue creada para investigar la particular situación existente hace varios años en la Corporación de Puerto Rico para la Difusión Pública. Como parte de dicha investigación se requirieron las planillas del licenciado Rullán Marín y éstas fueron entregadas a la Comisión. Por ser dicha Comisión un organismo creado de forma ad hoc para atender una situación específica, y que ésta dejó de existir cuando los senadores electos en las elecciones del 2000 tomaron posesión de su

cargo, sería totalmente especulativo concluir que en el futuro una comisión similar actúe de igual forma.

Por otro lado, aunque la controversia se repitiera, no existe razón alguna para pensar que ésta nuevamente evadirá el escrutinio de los tribunales. Es ciertamente posible que en casos similares la parte demandante podría resultar victoriosa ante el foro de instancia y ante el Tribunal de Apelaciones. Con ello se impediría que la controversia se tornara académica, pues el Secretario quedaría imposibilitado de entregar la información solicitada. En fin, no estamos ante un asunto que sea inherentemente de naturaleza tan efímera o de tan corta duración que existe una probabilidad sustancial de que los tribunales no logren pasar juicio sobre ella en caso de volver a repetirse.

En consideración a los fundamentos anteriormente esbozados, desestimaríamos el recurso presentado por el licenciado Rullán Marín, ya que no presenta un asunto justiciable ni una controversia susceptible de repetirse y evadir revisión judicial.