ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL 2025-41

| | | |
|---|---|---|
| **SUCESIONES DE JUAN RODRÍGUEZ NÚÑEZ y EMILIA GONZÁLEZ SANTOS compuesta por NORMA IRIS RODRÍGUEZ GONZÁLEZ**<br><br>Apelados<br><br>v.<br><br>**SUCESIONES DE JUAN RODRÍGUEZ NÚÑEZ y EMILIA GONZÁLEZ SANTOS compuesta por GLORIA RODRÍGUEZ GONZÁLEZ, ADRIÁN RODRÍGUEZ GONZÁLEZ, LUZ NEREIDA RODRÍGUEZ GONZÁLEZ, JUAN RODRÍGUEZ GONZÁLEZ**<br><br>Apelantes | TA2025AP00098 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.:<br>**CY2021CV00133**<br><br>Sobre:<br>Partición de Herencia |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.[1]

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 20 de agosto de 2025.

Comparece ante nos el señor Adrián Rodríguez González y el señor Juan Rodríguez González (en conjunto, parte apelante),

---

[1] Mediante Orden Administrativa OATA-2025-132 de 11 de julio de 2025, se designó a la Hon. Lersy G. Boria Vizcarrondo como integrante de este Panel Especial en sustitución del Hon. Félix R. Figueroa Cabán.

mediante una *Apelación* en la que solicitan que revoquemos una *Sentencia Final* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, (TPI) el 8 de mayo de 2025.[2] Por medio de dicho dictamen, el foro primario aprobó el acuerdo de transacción alcanzado entre la parte apelante y la señora Norma Iris Rodríguez González para darle finalidad al caso; y en su consecuencia, dictó sentencia con perjuicio.

Por su parte, la señora Norma Iris Rodríguez González radicó una *Moción de desestimación de la apelación por falta de jurisdicción* el 15 de julio de 2025.

El 22 de julio de 2025, la parte apelante presentó una oposición a dicha petición de desestimación intitulada *Moci[ó]n de pr[ó]rroga y otros particulares*, y radicó una *Moción complementaria luego de haber solicitado pr[ó]rroga* el 23 de julio de 2025.

El 31 de julio de 2025, la señora Norma Iris Rodríguez González presentó una *Moción urgente solicitando remedio*.

Ese mismo día, la parte apelante radicó una *Moción solicitando autorización para presentar alegato*, y, el 5 de agosto de 2025, la señora Norma Iris Rodríguez González presentó una *Moción solicitando prórroga* para radicar un alegato final. Sin embargo, denegamos ambas solicitudes mediante la presente *Sentencia*.

---

[2] Sistema Unificado de Manejo y administración de Casos (SUMAC), Entrada Núm. 331.

Por los fundamentos que pormenorizamos a continuación, se desestima el recurso de epígrafe por falta de jurisdicción.

**I.**

El caso de marras tiene su génesis el 19 de abril de 2021 cuando la señora Norma Iris Rodríguez González, en representación de las Sucesiones de Juan Rodríguez Núñez y Emilia González Santos, presentó una *Demanda* de partición de herencia en contra de sus hermanos, quienes también componían esas sucesiones.[3] Estos eran, la señora Gloria Rodríguez González, la señora Luz Nereida Rodríguez González, y la parte apelante. La señora Norma Iris Rodríguez González alegó que el señor Juan Rodríguez González ocupó la propiedad del caudal hereditario sin pagar renta ni contar con la autorización de todos los coherederos. Expuso que era necesario que se consignara en el Tribunal los cánones de renta que este adeudaba para satisfacer deudas del caudal, y completar los procesos para la venta de la propiedad y partición de herencia, conforme al cuaderno particional correspondiente. Además, suplicó del foro primario la venta directa del bien inmueble, y que ordenara a los codemandados a pagar los gastos legales, registrales y notariales necesarios para la liquidación del caudal hereditario. Por último, la señora Norma Iris Rodríguez González informó que los coherederos Víctor Manuel Rodríguez González, Lilliam Rodríguez

---

[3] Entrada Núm. 1 en SUMAC.

González y Gilberto Rodríguez González le vendieron y/o donaron a ella sus participaciones hereditarias mediante escrituras públicas, previo a la radicación del pleito, por lo que no eran parte indispensable.

El 18 de enero de 2022, la señora Luz Nereida Rodríguez González radicó una *Moción en solicitud de orden*.[4] Expuso que entre los bienes del caudal existía una cuenta de ahorros de FirstBank Puerto Rico (FirstBank), por lo que suplicó que se ordenara al banco a proveer información sobre dicha cuenta, y a consignar en el foro primario el balance actual.

Ante ello, el 25 de febrero de 2022, el TPI emitió una *Orden* donde declaró Ha Lugar dicha petición.[5]

Además, el 28 de marzo de 2022, FirstBank presentó una *Moción sobre consignación de fondos*, a la que le acompañó un cheque por la cantidad de $12,893.15 emitido a nombre del secretario del TPI.[6]

A partir del 21 de abril de 2022, la señora Norma Iris Rodríguez González comenzó a consignar en el TPI las rentas de la propiedad del caudal por la cantidad de $350.00 para los meses de abril a diciembre de 2022, y de enero a febrero de 2023.[7]

---

[4] Entrada Núm. 38 en SUMAC.
[5] Entrada Núm. 43 en SUMAC. Notificada y archivada en autos el 28 de febrero de 2022.
[6] Entrada Núm. 50 en SUMAC.
[7] Entradas Núms. 53-54; 80-81; 83-84; 89-91; 106-109; 110-111; 114-115; 121-122; 128; 136; 138; y 144 en SUMAC.

Posteriormente, la señora Norma Iris Rodríguez González presentó una *Moción Informativa* el 13 de julio de 2022 donde expresó que había adquirido el 62% de las participaciones, conforme a las donaciones de otros herederos.[8]

Luego de múltiples trámites procesales, el TPI emitió unas órdenes de venta directa y subasta privada de la propiedad del caudal, respectivamente, el 4 de enero de 2023.[9] En lo pertinente, la orden sobre venta directa expuso lo siguiente:

> Vista la Moción de la parte demandante, este tribunal decreta la venta directa de la propiedad que se describe a continuación:
> ---R[Ú]STICA: Predio de terreno radicado en el Barrio Toita de Cayey, Puerto Rico, con una cabida superficial de Uno punto Cero Ochocientas Treinta y Nueve cuerdas (1.0839 cdas), equivalentes a Cuatro Mil Doscientos Sesenta punto Cero Ocho metros cuadrados (4,260.08 mc), y en lindes por el NORTE, con el solar número Cuatro (4) y un camino, por el SUR, con un camino de Uso Público, por el SUR, con camino municipal y por el OESTE, con Gilberto Rodríguez.-------------------------------------------------
> ---Consta inscrita al folio Doscientos Treinta y Cinco (235) del tomo número Quinientos Siete (507) de Cayey, finca número Veinte Mil Setecientos Ochenta y Dos (20,782) Registro de la Propiedad de Caguas, Sección I.--------------------
> --------------Numero de catastro: 298-070-379-14-000. -------------------------------------------
> ---Se reconoce que existen dos estructuras edificadas y que forman parte de dicha finca incluidas en el valor de la tasación. ----------------
>
> La venta se realizará por la compradora Norma Iris Rodríguez González quien comprará al precio de

---

[8] Entrada Núm. 87 en SUMAC.
[9] Entradas Núms. 133-134.

tasación de ochenta y cinco mil dólares ($85,000.00) pagando con su participación hereditaria del 62.5% y consignando el restante del precio de compraventa luego de descontados los gastos de la venta en el Tribunal.

Expídase mandamiento.

. . . .[10]

El 10 de enero de 2023, el foro primario celebró una vista en la que resolvió que ese mismo día se emitiría el mandato de pública subasta.[11]

A pesar de lo anterior, la señora Norma Iris Rodríguez González radicó una *Moción informativa y solicitud de mandato de venta directa* el 14 de febrero de 2023.[12] Arguyó que la parte apelante incumplió reiteradamente con las órdenes del tribunal, por lo que suplicó que se emitiera un mandato para ejecutar la *Orden* del TPI emitida el 4 de enero de 2023 sobre la venta directa a la señora Norma Iris Rodríguez González. Alegó que la venta directa serviría para pagarle a la señora Luz Nereida Rodríguez González su participación del bien inmueble y del dinero consignado en el tribunal. De igual modo, adujo que se utilizaría para transar con la señora Luz Nereida Rodríguez González el pleito de marras, toda vez que la señora Luz Nereida Rodríguez González expresó que no tenía interés en las demás reclamaciones que la señora Norma Iris

---

[10] Entradas Núm. 133. Notificada y archivada en autos el 4 de enero de 2023.
[11] Entrada Núm. 135 en SUMAC.
[12] Entrada Núm. 139 en SUMAC.

Rodríguez González tenía en contra de la parte apelante. También solicitó que se estableciera como el valor del vehículo antiguo la cantidad de $25,000.00. Por último, arguyó que solo restaban dos controversias para la determinación del tribunal; a saber, las rentas reclamadas al señor Juan Rodríguez González, y lo referente al vehículo motor y los créditos reclamados entre las partes por los pagos realizados del CRIM a favor de las sucesiones.

El mismo 14 de febrero de 2023, el foro primario emitió una *Orden* en la que ordenó a los codemandados a exponer su posición respecto a la solicitud de la señora Norma Iris Rodríguez González dentro de diez (10) días perentorios.[13]

Sin embargo, el 24 de febrero de 2023, la señora Norma Iris Rodríguez González presentó una *Solicitud urgente de expedir mandamiento y otros extremos*.[14]

El 7 de marzo de 2023, el foro primario emitió un *Mandamiento de venta directa* a la señora Norma Iris Rodríguez González por el precio de tasación de $85,000.00, pagando su participación hereditaria del 62.5% y consignando en el tribunal el restante del precio de compraventa luego de descontar los gastos de dicha venta.[15] Determinó que, con el producto que se obtuviese de la venta, se tenían que pagar los pasivos del caudal y se pondría a

---

[13] Entrada Núm. 140 en SUMAC. Notificada y archivada el 17 de febrero de 2023.
[14] Entrada Núm. 141 en SUMAC.
[15] Entrada Núm. 143 en SUMAC.

la señora Norma Iris Rodríguez González en posesión de la propiedad en veinte (20) días.

El 9 de marzo de 2023, la señora Norma Iris Rodríguez González presentó una *Moción de consignación,* a la cual le acompañó un cheque con el producto de la venta directa de la residencia en cuestión por la cantidad de $31,875.00,[16] al igual que el cheque de la renta mensual de dicha propiedad.

Luego de ello, la parte apelante radicó una *Moción informativa* en la que adujo que estaba interesada en la adquisición de la finca en cuestión y consignó la cantidad de $52,700.00 para su compra.[17]

El 13 de marzo de 2023, el TPI celebró una vista en la que el representante legal de la señora Norma Iris Rodríguez González adujo que, conforme al mandamiento de la venta directa, se realizó la compraventa.[18] Adujo también que se presentó copia de la escritura de compraventa en el Registro de la Propiedad. Por tanto, sostuvo que no existía controversia con el bien inmueble y que la cantidad que le correspondía a los coherederos fue consignada en el Tribunal. Por su parte, la representante legal de la parte apelante expuso que, con relación al mandato, el mismo no había advenido final y firme.

---

[16] Entradas Núms. 144-145 en SUMAC.
[17] Entradas Núms. 149-150 en SUMAC.
[18] Entrada Núm. 154 en SUMAC.

Posteriormente, el 4 de mayo de 2023, el foro primario celebró una vista procesal en la que informó que el señor Juan Rodríguez González adeudaba $20,537.50 en concepto de arrendamiento, y que la nueva renta establecida por la señora Norma Iris Rodríguez González era por la suma de $850 mensuales a partir del 1 de abril de 2023.[19]

El foro primario celebró una vista transaccional el 26 de junio de 2023 en donde el representante legal de la señora Norma Iris Rodríguez González informó que el vehículo en cuestión tasó en $10,000.00.[20]

El 6 de julio de 2023, el señor Adrián Rodríguez González presentó una *Moción de retiro de fondos* en la que solicitó la devolución de los $52,700.00 consignados para la compraventa de la residencia. Sostuvo que el señor Juan Rodríguez González no tenía reparo con que se emitiera un cheque a nombre del señor Adrián Rodríguez González por ser dinero privativo de este último.[21]

El foro primario denegó dicho retiro ese mismo día.[22]

El 7 de julio de 2023, la señora Norma Iris Rodríguez González radicó una *Moción informativa, de oposición (temeridad) y en solicitud de sendas órdenes y advertencia de cánones de éticas infringidos.*[23]

---

[19] Entrada Núm. 159 en SUMAC.
[20] Entrada Núm. 170 en SUMAC.
[21] Entradas Núms. 171-172 en SUMAC.
[22] Entrada Núm. 173 en SUMAC.
[23] Entrada Núm. 175 en SUMAC.

Sostuvo que el señor Juan Rodríguez González adeudaba $20,626.30 en renta. De igual modo, adujo que la señora Luz Nereida Rodríguez González aceptó salir del pleito y que se le pagara su participación, por lo que solicitó que se emitiera una sentencia parcial y un cheque por la cantidad de $12,679.57.

El 11 de julio de 2023, el TPI emitió una *Certificación* informando que el dinero consignado en el caso de epígrafe era $101,760.11 desglosado en $101,318.15 por concepto de principal y $441.96 en concepto de intereses.[24]

Ese mismo día, el foro primario emitió una *Orden* en la que declaró Ha Lugar la solicitud de retiro de fondos y, en su consecuencia, ordenó a la Unidad de Cuentas del TPI para que expidiera un cheque a nombre de la señora Luz Nereida Rodríguez González por la cantidad consignada de $12,679.57 desglosado en $12,679.57 por concepto de principal y $0.00 por intereses.[25]

El 11 de julio de 2023, el TPI emitió una <u>*Sentencia Parcial*</u> en cuanto a la señora Luz Nereida Rodríguez González y ordenó la continuación de los procedimientos respecto a la parte apelante.[26]

El 11 de julio de 2023, dicho foro emitió una *Orden y mandamiento de lanzamiento* donde expuso que la orden de venta

---

[24] Entrada Núm. 179 en SUMAC.
[25] Entrada Núm. 180 en SUMAC. Notificada y archivada en autos el 12 de julio de 2023.
[26] Entrada Núm. 181 en SUMAC. Notificada y archivada en autos el 12 de julio de 2023.

directa a la señora Norma Iris Rodríguez González había advenido final, firme e inapelable.[27] El TPI expresó que la compraventa fue realizada por medio de una escritura de compraventa presentada ante el Registro de la Propiedad en el Asiento 2023-028735-CA01, y ordenó al alguacil del tribunal a poner a la señora Norma Iris Rodríguez González en posesión de la propiedad vendida de forma inmediata.

El 21 de julio de 2023, el señor Adrián Rodríguez González radicó una solicitud de reconsideración de la *Orden* emitida el 6 de julio de 2023, indicando que el no devolverle el dinero que depositó luego de arrepentirse de comprar el bien inmueble en cuestión fue contrario a derecho.[28] Adujo que dicho dinero no podía servir para el aseguramiento de sentencia que recayera contra su hermano, el señor Juan Rodríguez González. **Alegó que la suma de $52,700.00 consignados fueron exclusivamente para la adquisición de la propiedad objeto de partición y que ya <u>no estaba en controversia en el pleito de herencia</u>.** Por último, suplicó la devolución de dicho dinero.

Sin embargo, el 23 de julio de 2023, el foro primario denegó la solicitud de reconsideración.[29]

---

[27] Entrada Núm. 184 en SUMAC. Notificada y archivada en autos el 12 de julio de 2023.
[28] Entrada Núm. 186 en SUMAC.
[29] Entrada Núm. 187 en SUMAC. Notificada y archivada en autos el 24 de julio de 2023.

El 2 de agosto de 2023, el alguacil auxiliar del foro primario presentó un *Diligenciamiento del alguacil* donde certificó que la residencia en cuestión estaba desocupada y que se la entregó la misma a la señora Norma Iris Rodríguez González.[30]

El 11 de septiembre de 2023, el Panel de epígrafe emitió una *Resolución* en el caso KLCE202300931 donde denegó expedir el auto de *certiorari* con relación a la *Orden* emitida por el TPI el 6 de julio de 2023 denegando la solicitud del señor Adrián Rodríguez González para retirar los fondos consignados.[31]

Después de varios trámites procesales, el 7 de mayo de 2025, el TPI celebró un juicio en su fondo.[32] Durante el mismo, el representante legal de la parte apelante informó que discutió con dicha parte la oferta que el representante legal de la señora Norma Iris Rodríguez González había realizado en representación de ella, y que la parte apelante la iba a aceptar. Dicha oferta consistió en que:

> Los particulares de esta son los siguientes y que el licenciado Del Valle abunde de ser necesario, el acuerdo entre las partes será que existen aproximadamente $90,000 consignados en el tribunal entre rentas y un dinero que consignó el Sr. Adrián Rodríguez González por la cantidad de $52,700. De esos $90,000 doña Norma va a recibir $30,000 y la diferencia se le va a entregar a don Adrián y a don Juan mediante el proceso del tribunal. En cuanto al vehículo de motor que es un Nova del 1970 doña Norma renuncia a reclamación

---

[30] Entrada Núm. 193 en SUMAC.
[31] Entrada Núm. 230 en SUMAC. Al momento de emitirse dicha resolución, la Hon. Boria Vizcarrondo todavía no había sustituido al Hon. Figueroa Cabán; véase además, Entrada Núm. 238 en SUMAC.
[32] Entrada Núm. 330 en SUMAC.

alguna contra el mismo y se mantendrá en la posesión de don Adrián para su uso y disfrute. Confirma que la titularidad del vehículo está a nombre de don Adrián.

El licenciado Del Valle expresa que agradece al licenciado Rivas sus esfuerzos. Hace constar que en cinco días hará el Proyecto de Sentencia y que con el acuerdo se pone fin a todas las controversias.

. . . .[33]

Por orden del foro primario, se le tomó juramento a las partes, quienes confirmaron haber aceptado el acuerdo. Además, el tribunal dictaminó que iba a dictar sentencia y les concedió a los representantes legales un término de cinco (5) días para que presentaran un proyecto de sentencia.

El 8 de mayo de 2025, el TPI emitió una *Sentencia* de donde se desprende que el representante legal de la parte apelante expresó que había intención de realizar una oferta de transacción nuevamente para lo que el foro primario les concedió a los representantes legales que discutieran la misma.[34] **Después de varios recesos, los abogados informaron que las partes habían llegado a un acuerdo transaccional que finiquitaba** <u>**todas**</u> **las controversias del caso y finalizaba el mismo.** Manifestaron que el acuerdo:

[S]e reduce a pagar a la parte demandante NORMA IRIS RODRÍGUEZ GONZÁLEZ la cantidad de treinta mil dólares ($30,000) de los consignados en la cuenta del Tribunal bajo este caso, el codemandado Adrián

---

[33] *Íd.*
[34] Entrada Núm. 331 en SUMAC.

Rodríguez González mantiene el auto Nova 1970 el cual se encuentra bajo su titularidad y asignarles a los codemandados el restante balance de dinero que quede en la cuenta del Tribunal luego del descontar los $30,000 a la parte demandante.

El Tribunal tomó juramento a las partes y los examinó sobre el entendimiento de la transacción vertida para récord, su consentimiento a la misma de forma libre, inteligente y voluntaria para terminar el caso y sobre su satisfacción con los servicios de sus representantes legales presentes.

. . . .[35]

Así, el tribunal dictó sentencia con perjuicio.

El 14 de mayo de 2025, la señora Norma Iris Rodríguez González presentó una *Moción solicitando retiro de fondos*.[36] Suplicó del TPI que ordenara a la Unidad de Cuentas a preparar el cheque por la cantidad de $30,000.00, conforme a la *Sentencia* emitida el 8 de mayo de 2025.

Inconforme, la parte apelante radicó una *Moción sobre relevo de sentencia y reconsideración* el 21 de mayo de 2025.[37] Solicitó del foro primario autorizar el desembolso de las cantidades correspondientes a la parte apelante por concepto del pago de la compraventa, y, en la alternativa, que hiciera formar parte de la sentencia dicho pago previo a emitir una orden de retiro de fondos a favor de la señora Norma Iris Rodríguez González. Sostuvo que, una vez el foro *a quo* autorizara el pago consignado a favor de la

---

[35] *Íd.* (Énfasis suplido en el original eliminado).
[36] Entrada Núm. 333 en SUMAC.
[37] Entrada Núm. 334 en SUMAC.

parte apelante, procedía el desembolso del dinero consignado por concepto de rentas y del cheque depositado por la suma de $52,700.00.

La señora Norma Iris Rodríguez González presentó una *Moción en completa oposición a moción de reconsideración de la parte demandada* el 21 de mayo de 2025.[38] Adujo que la parte apelante pretendía cambiar el acuerdo o **continuar litigando temerariamente**. Expuso que una vez se aceptaba una estipulación judicial por medio de la cual se resolvía el pleito o alguna controversia dentro del mismo, la estipulación aceptada obligaba a las partes y tenía el efecto de cosa juzgada. Por último, alegó que aceptar la solicitud de reconsideración sería base para una nueva causa de acción de incumplimiento de contrato.

El 22 de mayo de 2025, el foro primario emitió una *Orden para retiro de fondos* en la que declaró Ha Lugar la solicitud de retiro de fondos presentada por la señora Norma Iris Rodríguez González, y ordenó a la Unidad de Cuentas del Tribunal a que emitiese un cheque a nombre de ella por la cantidad de $30,000.00.[39]

El 28 de mayo de 2025, se le entregó el cheque a la señora Norma Iris Rodríguez González por la cantidad de $30,868.15.[40]

---

[38] Entrada Núm. 335 en SUMAC.

[39] Entrada Núm. 338 en SUMAC. Notificada y archivada en autos el 23 de mayo de 2025; véase además, Entrada Núm. 337 en SUMAC.

[40] Entrada Núm. 341 en SUMAC.

Con relación a la solicitud de relevo de sentencia y reconsideración, el 27 de mayo de 2025, el foro primario señaló una vista argumentativa el 5 de junio de 2025 a las 3p.m. mediante videoconferencia.[41]

El 5 de junio de 2025, el TPI celebró la vista argumentativa.[42] El foro primario expresó que solicitó una vista argumentativa en virtud de la solicitud de relevo de sentencia radicada por la parte apelante, pero el representante legal de dicha parte no se conectó a la videoconferencia. Aclaró que una vez el tribunal emitió la sentencia ampliamente discutida con todas las partes, se aseguró de que las partes pasaran por el podio y se les tomó juramento dando la anuencia y el consentimiento de los acuerdos que provocaron que se dictara sentencia conforme a los acuerdos transaccionales. El TPI expresó que le llamó la atención la moción de reconsideración y relevo de sentencia, y que no veía el propósito de la misma. Dicho foro indicó que, en aras de llevar a cabo el debido proceso de ley, convocó la vista, pero la parte apelante, a sabiendas de que estaba citada, no se conectó a la vista mediante videoconferencia. En su consecuencia, el foro primario declaró No Ha Lugar la solicitud de reconsideración y relevo de sentencia, conforme a lo expuesto en las mociones, la incomparecencia

---

[41] Entrada Núm. 343 en SUMAC. Notificada y archivada en autos el 29 de mayo de 2025.

[42] Entrada Núm. 353 en SUMAC.

injustificada de la parte apelante y por la falta de interés en los reclamos. Además, solicitó que la minuta de dicha vista, la cual finalizó a las 3:28p.m., constituyera una *Minuta-Resolución*.

El 9 de junio de 2025, la parte apelante radicó un escrito al expediente judicial donde arguyó que a las 2:51p.m. se comunicó con la secretaria del TPI. Alegó que, a pesar de que inicialmente le informaron que no se había enviado un enlace para la vista, posteriormente le expresaron que le estarían enviando el enlace.[43] La parte apelante adujo que le expresó a la secretaria que le informara al juez que estaría disponible para la vista a las 3:30p.m.

El TPI emitió una *Orden* el 10 de junio de 2025 en la que expresó que no había nada que disponer y que examinara la *Minuta-Resolución* emitida el 5 de junio de 2025.[44]

Insatisfecha, la parte apelante presentó ante nos un recurso de apelación el 8 de julio de 2025 y planteó los siguientes señalamientos de error:

> **ERR[Ó] EL TPI Y ABUS[Ó] DE SU DISCRECI[Ó]N ACTUANDO ULTRA VIRES AL DENEGAR LA DEVOLUCI[Ó]N DE LOS FONDOS CONSIGNADOS POR LA PARTE DEMANDANTE LUEGO DE ADQUIRIR LA RESIDENCIA OBJETO DE PARTICI[Ó]N HEREDITARIA PARA EL PAGO CORRESPONDIENTE A LOS HEREDEROS COMPARECIENTES.**

> **ERR[Ó] EL TRIBUNAL AL EMITIR SENTENCIA EN AUSENCIA DE UN RELEVO DE HACIENDA QUE**

---

[43] Entrada Núm. 354 en SUMAC.

[44] Entrada Núm. 356 en SUMAC. Notificada y archivada el 12 de junio de 2025.

**COMPRENDA LA UNIVERSALIDAD DE LOS BIENES DEL CAUDAL HEREDITARIO.**

**ERR[Ó] EL TRIBUNAL AL NO IMPONER RESPONSABILIDAD A LA PARTE DEMANDANTE CONFORME DISPONE LA SENTENCIA PARCIAL NOTIFICADA EL 12 DE JULIO DE 2023.**

**ERR[Ó] EL TRIBUNAL AL EMITIR SENTENCIA EXISTIENDO FALTA DE PARTE INDISPENSABLE.**

**ERR[Ó] EL TRIBUNAL AL NO AUTORIZAR LA DEMANDA CONTRA TERCERO, A SABIENDAS, QUE FALTAN DINEROS POR CONTABILIZAR EN EL INVENTARIO DE BIENES DEL CAUDAL HEREDITARIO.**

Por su parte, la señora Norma Iris Rodríguez González radicó una *Moción de desestimación de la apelación por falta de jurisdicción* el 15 de julio de 2025. Adujo que la mayoría de los herederos le vendieron su participación a ella y otros llegaron a acuerdos transaccionales, quedando únicamente en el pleito de marras la parte apelante y ella. Arguyó que ambas partes llegaron a un acuerdo libre, inteligente y voluntario ante el TPI, quien dictó sentencia autorizando la transacción alcanzada. Expuso que ella cobró su cheque, resultado de la transacción aceptada por la parte apelante, por lo que consideraba el recurso de apelación ante nos uno frívolo. Por ende, suplicó que desestimáramos el recurso por falta de jurisdicción y porque el asunto planteado constituía cosa juzgada. Asimismo, solicitó que le impusiéramos a la parte apelante una suma de $6,000.00 en concepto de honorarios de abogado por temeridad.

El 22 de julio de 2025, la parte apelante presentó su oposición a dicha petición de desestimación intitulada *Moci[ó]n de pr[ó]rroga y otros particulares*. Además, radicó una *Moción complementaria luego de haber solicitado pr[ó]rroga* el 23 de julio de 2025. En síntesis, sostuvo que el acuerdo transaccional atendió la adjudicación del vehículo Nova del año 1970 y el cobro de renta al señor Juan Rodríguez González, pero no así el alegado pago que le corresponde a la parte apelante por la venta de la residencia. Además, arguyó que el TPI no permitió su comparecencia a la vista argumentativa.

El 31 de julio de 2025, la señora Norma Iris Rodríguez González radicó una *Moción urgente solicitando remedio* en la que reiteró su solicitud de desestimación del recurso ante nos.

Ese mismo día, la parte apelante radicó una *Moción solicitando autorización para presentar alegato*, y, el 5 de agosto de 2025, la señora Norma Iris Rodríguez González presentó una *Moción solicitando prórroga* para radicar un alegato final. Sin embargo, denegamos ambas solicitudes mediante la presente *Sentencia*.

## II.

### A.

La jurisdicción es el poder o la autoridad que tienen los tribunales para considerar y resolver casos o controversias. *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Administración de Terrenos de Puerto Rico v. Ponce Bayland*

*Enterprises, Inc.*, 207 DPR 586, 600 (2021). Como asunto de umbral, "las cuestiones relativas a la jurisdicción de un tribunal, por ser privilegiadas, deben resolverse con preferencia a cualesquiera otras". *Mun. Rincón v. Velázquez Muñiz,* 192 DPR 989, 995 (2015); *Peerless Oil v. Hermanos Pérez,* 186 DPR 239, 250 (2012). Nuestro máximo foro ha reiterado que los tribunales deben ser celosos guardianes de su jurisdicción y carecen de discreción para asumirla donde no la tienen. *S.L.G. Szendry Ramos v. F. Castillo,* 169 DPR 873, 882 (2007); *Morán v. Martí,* 165 DPR 356, 364 (2005). Es decir, "[l]a falta de jurisdicción de un tribunal no es susceptible de ser subsanada". *S.L.G. Szendry Ramos v. F. Castillo, supra,* pág. 883; *Souffront v. A.A.A.,* 164 DPR 663, 674 (2005).

En consideración de lo anterior, los foros adjudicativos deben examinar su jurisdicción, así como la del foro de donde procede el recurso ante su consideración. Más importante aún, "los tribunales tienen el deber ministerial, una vez cuestionada su jurisdicción, de examinar y evaluar rigurosamente el planteamiento jurisdiccional, pues éste incide directamente sobre el poder mismo para adjudicar una controversia". *S.L.G. Szendry Ramos v. F. Castillo, supra,* pág. 883; *Souffront v. A.A.A., supra,* pág. 674. Tan pronto un tribunal determina que carece de jurisdicción para atender el asunto planteado ante sí, procede la inmediata desestimación del recurso apelativo conforme a lo ordenado por las leyes y los reglamentos para el perfeccionamiento

de estos recursos. *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 386-387 (2020); *Pearless Oil v. Hermanos Pérez, supra*, pág. 250; *S.L.G. Szendry Ramos v. F. Castillo, supra*, pág. 883. Lo anterior, pues la falta de jurisdicción conlleva serias consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. Fuentes Bonilla v. ELA*, 200 DPR 364, 372-373 (2018).

## B.

En esa misma línea, los tribunales solo pueden evaluar aquellos casos que son justiciables, pues es su deber adjudicar controversias que sean reales y vivas. *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011); *Moreno v. U.P.R. II*, 178 DPR 969, 973 (2010). Para que una controversia sea justiciable se debe evaluar si es (1) tan definida y concreta que afecte las relaciones jurídicas entre las partes que tienen un interés jurídico antagónico; (2) que el interés sea real y substancial y que permita un remedio específico mediante una sentencia de carácter concluyente, y finalmente (3) si la controversia

es propia para una determinación judicial, ya que se distingue de una disputa de carácter hipotético o abstracto, y de un caso académico o ficticio. *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 932; *Estado Libre Asociado de P.R. v. Aguayo,* 80 DPR 552, 583-584 (1958). Por ende, una controversia no será justiciable cuando (1) se trata de resolver una cuestión política; (2) una de las partes no tiene legitimación activa; (3) después que ha comenzado el pleito, hechos posteriores la convierten en académica; (4) las partes buscan obtener una opinión consultiva, o (5) se promueve un pleito que no está maduro. *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 932; *Noriega v. Hernández Colón,* 135 DPR 406, 421-422 (1994).

Una de las doctrinas que autolimitan la intervención judicial está la academicidad. *Rullán v. Fas Alzamora,* 166 DPR 742, 760-761 (2006). Con esta norma, se persigue prevenir el uso innecesario de los recursos judiciales e impedir precedentes que resulten superfluos. *C.E.E. v. Depto. de Estado,* 134 DPR 927, 935-936 (1993). Un pleito es académico cuando " 'se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente' ". *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 932 (*citando a San Gerónimo Caribe Project v. A.R.Pe.,* 174 DPR 640, 652 (2008)). De igual

modo, una controversia se torna académica cuando "los cambios fácticos o judiciales acaecidos durante el trámite judicial torna en ficticia su solución, convirtiéndose así en una opinión consultiva sobre asuntos abstractos". *San Gerónimo Caribe Project v. A.R.Pe., supra,* págs. 652-653; *P.P.D. v. Gobernador I,* 139 DPR 643, 675-676 (1995). Por tanto, al evaluar la academicidad:

> [H]ay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente. Este análisis es vital para determinar la existencia de los requisitos constitucionales ('caso o controversia') o jurisprudenciales de justiciabilidad. Un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se pierde.
>
> *P.P.D. v. Gobernador I, supra,* pág. 676 (*citando a Asoc. De Periodistas v. González,* 127 DPR 704, 717-718 (1991)).

A pesar de lo anterior, existen unas excepciones a la doctrina de academicidad que permiten la consideración de un pleito que, de otra forma, resultaría académico respecto al resultado o efecto inmediato. *P.P.D. v. Gobernador I, supra,* pág. 676. Las excepciones operan cuando se plantea ante el tribunal: (1) una cuestión recurrente o susceptible de volver a ocurrir; (2) cuando el demandado ha modificado la situación de hechos, pero el cambio no aparenta ser permanente, y (3) cuando aspectos de la controversia se tornan académicos pero subsisten consecuencias colaterales que tienen vigencia y actualidad. *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 933; *U.P.R. v. Laborde Torres y Otros,* 180 DPR 253, 281 (2010); *Moreno v.*

*U.P.R. II, supra,* págs. 973-974. Estas excepciones tienen que usarse con mensura, ya que no se pueden obviar los límites constitucionales que inspiran la norma de academicidad. *Asoc. Fotoperiodistas v. Rivera Schatz, supra,* pág. 933; *Moreno v. U.P.R. II, supra,* pág. 974 (2010).

Nuestro máximo foro ha expresado que "los tribunales pierden su jurisdicción sobre un caso por academicidad cuando ocurren cambios fácticos o judiciales durante el trámite judicial de una controversia que tornan en académica o ficticia su solución". *Rullán v. Fas Alzamora, supra,* pág. 761; *Cruz v. Administración,* 164 DPR 341, 349 (2005). Consecuentemente, cuando un tribunal determina que un caso es académico, se debe abstener de atenderlo en sus méritos. *Rullán v. Fas Alzamora, supra,* pág. 761.

### III.

En el caso de marras, la parte apelante presentó ante nos un recurso de apelación solicitando la revocación de la *Sentencia Final* emitida por el foro primario el 8 de mayo de 2025. Por medio de esta, dicho tribunal aprobó el acuerdo transaccional alcanzado entre las partes para finiquitar todas las controversias del caso y finalizar el mismo. Dicho acuerdo:

> [S]e reduce a pagar a la parte demandante NORMA IRIS RODRÍGUEZ GONZÁLEZ la cantidad de treinta mil dólares ($30,000) de los consignados en la cuenta del Tribunal bajo este caso, el codemandado Adrián Rodríguez González mantiene el auto Nova 1970 el cual se encuentra bajo su titularidad y asignarles a los codemandados el restante balance de dinero que quede

> en la cuenta del Tribunal luego del descontar los $30,000 a la parte demandante.
>
> El Tribunal tomó juramento a las partes y los examinó sobre el entendimiento de la transacción vertida para récord, su consentimiento a la misma de forma libre, inteligente y voluntaria para terminar el caso y sobre su satisfacción con los servicios de sus representantes legales presentes.
>
> . . . .[45]

Por su parte, la señora Norma Iris Rodríguez González radicó una solicitud de desestimación. Arguyó que ambas partes llegaron a dicho acuerdo libre, inteligente y voluntario ante el TPI, quien dictó sentencia autorizando la transacción alcanzada. Expuso que ella cobró su cheque, por lo que consideraba el recurso de apelación ante nos uno frívolo. Por ende, suplicó que desestimáramos el recurso por falta de jurisdicción y porque el asunto planteado constituía cosa juzgada. Además, solicitó que le impusiéramos a la parte apelante una suma de $6,000.00 en concepto de honorarios de abogado por temeridad.

Un examen cuidadoso del tracto procesal del pleito de epígrafe demuestra que los únicos coherederos restantes en el pleito son la parte apelante y la señora Norma Iris Rodríguez González, quien adquirió una participación de 62.5% por medio de donaciones. Al momento de la radicación de la demanda, existía en el caudal un dinero dentro de una cuenta de ahorros localizada en FirstBank; un

---

[45] *Íd.* (Énfasis suplido en el original eliminado).

vehículo motor Nova del año 1970; y un bien inmueble. Además, la señora Norma Iris Rodríguez González alegó que el señor Juan Rodríguez González residía en dicha propiedad, pero no pagaba renta.

Luego de la presentación de la demanda y múltiples trámites procesales, el FirstBank **consignó** en el TPI el dinero que se encontraba en la cuenta de ahorros; es decir, $12,893.15. Además, a partir del 21 de abril de 2022, la señora Norma Iris Rodríguez González **comenzó a consignar** en el foro primario las rentas de la propiedad por la cantidad de $350.00 para los meses de abril a diciembre de 2022, y de enero a febrero de 2023. Subsiguientemente, dicha cantidad aumentó a $850 mensuales a partir del 1 de abril de 2023. Sin embargo, para el 7 de julio de 2025, la señora Norma Iris Rodríguez González informó que el señor Juan Rodríguez González adeudaba $20,626.30 en renta.

Ahora bien, en cuanto a la propiedad, el foro primario emitió una orden de venta directa a la señora Norma Iris Rodríguez González y otra orden de subasta privada de la propiedad del caudal, respectivamente. Posteriormente, la señora Norma Iris Rodríguez González informó al foro *a quo* que la parte apelante incumplió reiteradamente con las órdenes del tribunal, por lo que suplicó que se emitiera un mandato para ejecutar la orden sobre la venta directa. Aun así, el foro primario ordenó a los codemandados a

exponer su posición. Subsiguientemente, la señora Norma Iris Rodríguez González reiteró su solicitud y el foro primario emitió un *Mandamiento de venta directa* a la señora Norma Iris Rodríguez González por el precio de tasación de $85,000.00, pagando su participación hereditaria del 62.5% y consignando el restante del precio de compraventa luego de descontados los gastos de la venta en el Tribunal.

Así, la señora Norma Iris Rodríguez González **consignó** la cantidad de $31,875.00, producto de la venta directa de la residencia. *Posterior* a la venta de la propiedad y la antedicha consignación, la parte apelante adujo que estaba interesada en la adquisición de la finca en cuestión y **consignó** la cantidad de $52,700.00 para su compra. Luego de varios trámites procesales, el señor Adrián Rodríguez González solicitó la devolución de los $52,700.00, empero el foro primario denegó dicho retiro. Inconforme, el señor Adrián Rodríguez González radicó una solicitud de reconsideración donde indicó que el no devolverle el dinero que depositó era contrario a derecho. También alegó que la suma de $52,700.00 consignada fue exclusivamente para la adquisición de la propiedad objeto de partición y que ya **no estaba en controversia en el pleito de herencia.** Sin embargo, el foro primario denegó la solicitud de reconsideración.

A pesar del acuerdo alcanzado por las partes, y el cual fue aprobado por el TPI, la parte apelante suplicó del TPI el desembolso de las cantidades correspondientes a la parte apelante por concepto del pago de la compraventa, al igual que la suma de $52,700.00. Con relación a esta petición, el foro primario celebró una vista argumentativa. A pesar de concederle otra oportunidad, la parte apelante no compareció. En cambio, la parte apelante adujo que el TPI no le permitió comparecer y que le indicó a la secretaria del foro primario que le indicara al juez que estaría disponible para la vista a las 3:30p.m., cuando la misma había sido pautada para las 3p.m. y culminó a las 3:28p.m.

De un examen de la súplica del recurso de apelación ante nos, surge que la parte apelante solicitó que se le devolviera el dinero que le corresponde por la venta de la residencia en cuestión; que se le hiciera entrega al señor Adrián Rodriguez González de la cantidad de $52,700.00; y que se le adjudicara al señor Adrián Rodriguez González el vehículo de motor Nova del año 1970. En la alternativa, la parte apelante solicitó que se desestimara el pleito de autos, que se le pagara el dinero consignado en el tribunal con relación a la compraventa del bien inmueble, se recalendarizara la vista argumentativa, y/o se relevara a la parte apelante de la determinación apelada.

Sin embargo, el acuerdo estipulado entre las partes ya atendió lo anterior. Se desprende de la *Sentencia* del 8 de mayo de 2025, que los abogados informaron que las partes habían llegado a un acuerdo transaccional que finiquitaba todas las controversias del caso y finalizaba el mismo. Como parte de ese acuerdo, las partes estipularon que el señor Adrián Rodríguez González mantendría el auto Nova 1970, el cual ya se encontraba bajo su titularidad. Además, acordaron que, del dinero consignado en el tribunal, $30,000 serían pagados a la señora Norma Iris Rodríguez González **y que se le asignaría a la parte apelante el restante balance de dinero que quede en la cuenta del Tribunal luego de descontar los $30,000 a la parte demandante.** Conforme a lo anterior, el TPI le entregó el cheque a la señora Norma Iris Rodríguez González por la cantidad de $30,868.15. Como puede apreciarse, no existe controversia real ante nos para el ejercicio válido de nuestro poder judicial porque las partes alcanzaron un acuerdo transaccional tornando el pleito en uno académico.

Adviértase que, con la doctrina de academicidad, se persigue prevenir el uso innecesario de los recursos judiciales e impedir precedentes que resulten superfluos. *C.E.E. v. Depto. de Estado, supra,* págs. 935-936. Una controversia se torna académica cuando "los cambios fácticos o judiciales acaecidos durante el trámite judicial torna en ficticia su solución, convirtiéndose así en una opinión

consultiva sobre asuntos abstractos". *San Gerónimo Caribe Project v. A.R.Pe., supra*, págs. 652-653; *P.P.D. v. Gobernador I, supra*, págs. 675-676. Por tanto, al evaluar la academicidad:

> [H]ay que concentrarse en la relación existente entre los eventos pasados que dieron inicio al pleito y la adversidad presente. Este análisis es vital para determinar la existencia de los requisitos constitucionales ('caso o controversia') o jurisprudenciales de justiciabilidad. Un caso se convierte en académico cuando con el paso del tiempo su condición de controversia viva y presente se pierde.
>
> *P.P.D. v. Gobernador I, supra*, pág. 676 (*citando a Asoc. De Periodistas v. González, supra*, págs. 717-718).

Ante la ausencia de alguna de las excepciones para considerar un caso académico, estamos impedidos de atender el caso en sus méritos. *Rullán v. Fas Alzamora, supra*, pág. 761.

Por último, tal como planteó la señora Norma, los argumentos de la parte apelante son frívolos ni poseen lógica alguna. *Depto. Rec. V. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999). Lo anterior, pues el acuerdo alcanzado entre las partes le dio finalidad al pleito y lo solicitado por medio del recurso de apelación fue concedido y/o atendido por medio de lo que estipularon las partes.

## IV.

Por las razones discutidas anteriormente, se desestima el recurso de marras por falta de jurisdicción y frivolidad, al amparo de la Reglas 83(4) y (5), y 85 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento*

*TA*, 2025 TSPR 42, págs. 109-110, 113-114, 215 DPR __ (2025). Se le impone a la parte apelante una sanción de $1,000.00, la cual deberá ser satisfecha a nombre de la señora Norma dentro del término de 10 días, contados a partir de la presente *Sentencia.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones